Defendant's request for attorneys' fees will be denied.

Travis JACKSON, Plaintiff,

v.

Honorable Denis DILLON, District Attorney, Nassau County; Detective O'Connor, Nassau County Police Department; and Police Officer Kilbride, Village of Freeport Police Department, Defendants.

No. 78 C 1814.

United States District Court, E. D. New York.

July 15, 1981.

Travis X. Jackson, pro se.

Edward G. McCabe, County Atty., Nassau County, Mineola, N. Y., for defendants Dillon and O'Connor by Joseph T. Carney, Deputy County Atty., Mineola, N. Y.

Rogan & Croutier, Garden City, N. Y., for defendant Kilbride by John W. Cheyney, Garden City, N. Y.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff *pro se*, a State prisoner currently serving a term of imprisonment following his conviction for robbery, has instituted this civil rights action against the District Attorney of Nassau County, a detective of the County's police department, and an officer of the Freeport, Long Island, police department. He seeks damages for an alleged violation of constitutional rights in connection with statements he made and a confession he signed acknowledging his participation in the robbery. The action is now before the Court on defendants' motions to dismiss the complaint for failure to state a claim and for summary judgment.[1] For the reasons which follow, the motions are granted.

Prior to the start of plaintiff's first trial, the Nassau County Court denied his motion to suppress the statements and confession. The evidence was introduced at plaintiff's trial and he was found guilty of robbery, grand larceny and petit larceny. On appeal, the New York Court of Appeals reversed the trial court's decision on the motion to suppress and ordered a retrial at which the tainted evidence could not be used. *People v. Jackson*, 41 N.Y.2d 146, 391 N.Y.S.2d 82, 359 N.E.2d 677 (1976).

The Court of Appeals reversed on the basis of the following facts: On the evening of December 20, 1973, plaintiff voluntarily appeared at the First Precinct, Nassau County Police Station. He was informed that he, as well as Larry Davis, a young acquaintance of his, were both suspected in a robbery of a pharmacy that had occurred earlier that day. Plaintiff was taken upstairs for questioning and was advised of his rights, including his right to counsel. At this point plaintiff told the interrogating officers that he did not wish to speak with them until he had consulted with an attorney. The officers and plaintiff then made several unsuccessful attempts to place a telephone call to a Muslim mosque where plaintiff believed he could obtain counsel.

Thereafter, notwithstanding plaintiff's request for an attorney, the interrogating officers continued to question him. In addition, plaintiff was confronted with the tearful mother of Davis, who pleaded with him to tell the police the truth and explain her son's non-involvement. At this point, plaintiff admitted that Davis did not know about the robbery and had only been used by plaintiff to obtain his car. Plaintiff expressed a willingness to discuss the incident and, after being advised of his constitutional rights a second time, signed a waiver of those rights. He then made incriminating statements and subsequently signed a written confession that had been prepared by the police.

The Court of Appeals concluded that in light of plaintiff's request for an attorney, and his continued questioning in an atmo-

---

1. Defendant Kilbride has moved to dismiss the complaint for failure to state a claim. Since the parties have submitted materials outside the pleadings, however, which the Court has not excluded, Kilbride's motion will be treated as one for summary judgment and disposed of, along with the other defendants' motions, in accordance with Rule 56. Rule 12(b)(6), F.R. Civ.P.

sphere of "psychological pressure to confess," his statements and confession could not be considered "voluntary" within the meaning of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). At plaintiff's retrial, where none of this evidence was used, he was again found guilty of robbery. His conviction was affirmed without opinion, 69 A.D.2d 1022, 415 N.Y.S.2d 315 (App.Div. Second Dept.), and leave to appeal was denied by the Court of Appeals, 47 N.Y.2d 906, 419 N.Y.S.2d 1032, 393 N.E.2d 494 (1979).[2]

■ In order to be awarded relief in a civil rights action, a plaintiff must establish two elements: first, that a particular defendant has caused a deprivation of a right guaranteed by the federal constitution, and second, that that person acted under color of State law. See *Gomez v. Toledo*, 446 U.S. 635, 639, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). There is no question here that defendants could be considered State actors. The Court will therefore review the record to determine the particular involvement in the complained of events, if any, of the defendants named in this action. Thereafter, our approach must be to isolate the precise constitutional violation that could be alleged under a liberal reading of the complaint. See *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). This threshold inquiry is necessary because 42 U.S.C. § 1983 empowers this Court to award damages only for deprivations of rights secured by the federal constitution. *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979).

Turning first to defendant Kilbride, on December 20, 1973, he was patrolling in a squad car when he heard a radio bulletin announcing a robbery and describing the two men who had fled in a gold Cadillac. Kilbride spotted the car and followed it to a house where Larry Davis was taken into custody.

When the police learned from Davis that plaintiff appeared to be involved in the robbery, defendant O'Connor left for Davis' house, where plaintiff rented a room. Plaintiff was not there, but O'Connor found belongings of his that fit the precise description of the robber given by the pharmacy owner.

Later that evening plaintiff voluntarily appeared at the police station and was first met by O'Connor, who was on duty in the front office. O'Connor escorted plaintiff upstairs to an interrogation room and immediately returned to the office downstairs. O'Connor's sworn affidavit states that he was totally ignorant of plaintiff's request for an attorney and the attempts made upstairs to contact the mosque. He denies that he was present during the interrogation and only saw plaintiff again when an officer produced him and requested that O'Connor take down the statement plaintiff was then prepared to make.

Plaintiff, in response to this showing on the motion for summary judgment, asserts no more than that at the original hearing on the motion to suppress, O'Connor testified that he had attempted to telephone the mosque and knew of plaintiff's request for an attorney. The Court's independent review of O'Connor's testimony at that hearing, however, reveals that he maintained then, as he does now, that he was totally ignorant of the request for counsel. This assertion is thus insufficient to raise a *genuine* issue as to whether O'Connor knowingly took a statement in violation of plaintiff's *Miranda* rights. Otherwise, plaintiff's response to the motions is wholly limited, as is the complaint, to conclusory assertions that his rights have been denied.[3]

---

**2.** This action was commenced following the reversal of plaintiff's first conviction. By memorandum and order dated April 11, 1978, the Court dismissed that portion of the complaint which sought injunctive relief. See *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Court retained jurisdiction over the claim for $3,000,000 in damages but

stayed the action pending the resolution on remand of the criminal proceedings against plaintiff.

**3.** Plaintiff also claims that, although there were no external indications of the incident, he was assaulted by someone before he stated his willingness to confess. To the extent this allegation states a claim arising out of the excessive

We turn next to the critical question of whether this conduct could amount to a deprivation of a federal constitutional right. Since the events at the station house took place while plaintiff was in custody but well before judicial proceedings had been initiated, plaintiff's Sixth Amendment right to counsel is not implicated in this case. *Carvey v. LeFevre*, 611 F.2d 19, 21 (2d Cir. 1979). Rather, the constitutional guarantee that could be at issue here is plaintiff's Fifth and Fourteenth Amendment privilege against self-incrimination as interpreted in *Miranda* and its progeny.

 The Fifth Amendment, made applicable to the States through the Fourteenth Amendment, guarantees that

"no person ... shall be compelled in any criminal case to be a witness against himself ...."

Until an improperly obtained confession is used at a defendant's criminal trial, his privilege against self-incrimination has not been compromised. *Triplett v. Azordegan*, 570 F.2d 819, 822 (8th Cir. 1978); *Ransom v. City of Philadelphia*, 311 F.Supp. 973 (E.D. Pa.1970). The mere taking of a statement or confession, without more, that is later

---

determined to have been made "involuntarily," is not a *per se* constitutional violation, but only constitutes an irrebuttable presumption in a criminal trial that the evidence is inadmissible. See *Duncan v. Nelson*, 466 F.2d 939, 944 (7th Cir.), *cert. denied*, 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 152 (1972). See generally, *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The contours of a criminal defendant's requisite showing under the exclusionary rule and the burden on a plaintiff in a civil rights case cannot be said to be coterminous. Indeed, once a criminal defendant on a motion to suppress has established that his constitutional rights were compromised, it is by no means certain that he must thereafter prove that particular law enforcement officials acted in bad faith or negligently. See *Dunaway v. New York*, 442 U.S. 200, 221 n.2, 225–27, 99 S.Ct. 2248, 2261 n.2, 2263–64, 60 L.Ed.2d 824 (Stevens, J., concurring, Rehnquist, J., dissenting).

 Turning to the particular defendants named in the complaint, there is no allegation of any personal involvement of defendant Dillon, and the Court presumes that he has been named mainly due to the circum-

---

use of force by arresting and interrogating police officers, see *Bellows v. Dainack*, 555 F.2d 1105 (2d Cir. 1977), it accrued in December 1973 at the time of plaintiff's arrest. In actions brought pursuant to 42 U.S.C. § 1983 it has long been the rule of this Circuit that federal courts in New York apply the three-year limitations period provided in N.Y. C.P.L.R. § 214(2). *Leonhard v. United States*, 633 F.2d 599, 615 (2d Cir. 1980); *Romer v. Leary*, 425 F.2d 186 (2d Cir. 1970); *Swan v. Board of Higher Education*, 319 F.2d 56 (2d Cir. 1963). But see *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 449 n.6 (2d Cir. 1980).

Whether the running of the limitations period is to be tolled presents a question of State law. *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Prior to its amendment in 1973, N.Y. C.P.L.R. § 208 provided a toll of the statute of limitations during the period of a plaintiff's imprisonment if the claim accrued while he was incarcerated. This tolling provision for prisoners, however, was omitted from the statute by amendment effective September 10, 1973, and the New York courts no longer consider prisoners to be under a "legal disability." *See Kelly v. State*, 57 A.D.2d 520, 395 N.Y.S.2d 311 (App.Div. Fourth Dept. 1977), *aff'd*, 45 N.Y.2d 973, 412 N.Y.S.2d

---

891, 385 N.E.2d 628 (1978). Moreover, in another action filed in this Court (*Jackson v. Eng*, 78 C 2129) plaintiff stated that he was at liberty during at least part of the period his appeals were pending. Plaintiff, therefore, was not subject to the "practical difficulties prisoners face," *Kaiser v. Cahn*, 510 F.2d 282, 285 (2d Cir. 1974), throughout the three-year period during which § 214(2) required him to file his action, and we do not consider it "inconsistent" with federal policies to apply the statute of limitations in this case as New York would. See *Board of Regents v. Tomanio, supra*, 100 S.Ct. at 1796–97. Since plaintiff's claim with respect to the alleged excessive use of force accrued in December 1973, and he commenced this action in September 1977, in the absence of any applicable toll of the State statute of limitations, the claim is time barred and must be dismissed.

In any event, plaintiff makes no allegation that any of the named defendants used excessive force on him, nor that they corruptly agreed to effect such an impropriety. Nor does plaintiff rebut with any particularity defendants' express denials that they were involved in any assault, that they were aware of such an occurrence, or that any assault ever occurred.

stance that criminal prosecutions in Nassau County are brought in his name. In any event, to the extent that the complaint could state a cause of action against Dillon for the offer of tainted evidence at plaintiff's first trial, it is foreclosed by the absolute immunity against civil rights actions enjoyed by State prosecutors engaged in the judicial phase of the criminal process. *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976); *Lee v. Gold,* 617 F.2d 320, 322 (2d Cir. 1980).

■■■ Turning to the involvement of Kilbride and O'Connor, plaintiff's right not to have the statements and confession taken by O'Connor used against him was vindicated when the New York Court of Appeals reversed his first conviction and ordered a new trial. Since his second conviction was obtained without the use of the tainted evidence, plaintiff cannot seek redress in this civil action for his current incarceration. Nor could defendants Kilbride or O'Connor be found liable for the injury, if any, incurred when plaintiff had to stand trial a second time. Even assuming, contrary to the Court's discussion above, that these defendants were knowingly responsible for the taking of the statements and confession in a manner later determined to render them "involuntary," the prosecutor's determination to offer them at the first trial, and the trial judge's decision to admit them in evidence are intervening factors sufficient to preclude a finding that Kilbride or O'Connor caused the evidence to be used against plaintiff. See *Duncan v. Nelson, supra,* 466 F.2d at 942–43.

Accordingly, since plaintiff has failed to rebut defendants' showing that there exists no genuine issue of material fact as to whether these defendants deprived him of a right guaranteed by the federal constitution, defendants' motions are granted.[4]

SO ORDERED.

4. While the alleged distress plaintiff has suffered could conceivably give rise to a claim under State law, the mere circumstance that an alleged tortfeasor acted under color of State law does not convert a simple tort claim into a federal civil rights cause of action. See *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1978).