**Randall Edward REX,**
**Plaintiff-Appellant,**

v.

**John P. TEEPLES, Donald E. Johnson,**
**Jr., and Edward Rupert,**
**Defendants-Appellees.**

No. 83–2055.

United States Court of Appeals,
Tenth Circuit.

Jan. 28, 1985.

Rehearing Denied March 27, 1985.

H. Christopher Clark of Inman & Flynn P.C., Denver, Colo., for plaintiff-appellant.

David R. Brougham of Hall & Evans, Denver, Colo. (Ronald C. Hill of Anstine & Hill, Denver, Colo., with him on the brief), for defendant-appellee Johnson.

Wendelyn K. Walberg, Denver, Colo. (John E. Walberg, Denver, Colo., with her on the brief), for defendant-appellee Teeples.

Before BARRETT, BREITENSTEIN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Randall Rex brought this civil rights action pursuant to 42 U.S.C. § 1983 (1982) against Loveland police officer John Teeples and Chief Deputy District Attorney Donald Johnson. Rex contends that his constitutional rights were violated when Teeples improperly imprisoned him by placing him on a seventy-two hour mental hold, and when Teeples and Johnson coerced his involuntary confession. The district court granted Johnson's motion for summary judgment, concluding as a matter of law that Johnson was entitled to absolute prosecutorial immunity. The court subsequently granted summary judgment for Teeples, holding that Rex's claims were cognizable only under state tort law and did not rise to constitutional violations. We reverse and remand for further proceedings.

## I.

## BACKGROUND

■ The record in this case is scant. Defendants presented little evidence to support their motions for summary judgment, and we must draw our recitation of the facts primarily from the pleadings and related state court opinions. Moreover, we must view the facts and inferences in the light most favorable to Rex as the party opposing the summary judgment motion. *Lindley v. Amoco Production Co.,* 639 F.2d 671, 672 (10th Cir.1981); 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2716 at 643 (2d ed. 1983). In his complaint Rex alleges that he was brought to McKee Medical Center in Loveland, Colorado at about 1:30 p.m. September 14, 1977, after he had attempted to commit suicide by carbon monoxide poisoning. While Rex was hospitalized on September 14, Teeples represented himself to Rex as a minister as well as a police officer and questioned him about a recent kidnapping. Rex alleges that Teeples conspired with Dr. Howard Franklin, who was in charge of the Medical Center emergency room, to place Rex under a seventy-two hour mental hold because Teeples had no

probable cause to arrest Rex and wanted to question him further. Under Teeples' direction, Rex was transferred at about midnight on September 14 to Poudre Valley Hospital in Fort Collins.

On September 15 in Rex's hospital room, Teeples and Johnson began a second interrogation which they taped. Johnson testified in the summary judgment hearing that his only responsibility had been to make certain that Rex was properly advised of his rights and that Rex had waived them, although Johnson also stated that he had been present for at least forty-five minutes of the four to five hour interrogation and had asked some questions. Rex alleges that Johnson and Teeples took advantage of his confused mental state during this questioning, deceived him into believing he was not a suspect, induced him to talk without the assistance of an attorney, and coerced him into telling them what they wanted to hear. On September 16, Rex was transferred to the Larimar County jail, and on September 19 a criminal information was filed charging Rex with attempted murder, second degree kidnapping, and third degree sexual assault.

The sexual assault charge was dismissed after a preliminary hearing. Rex's first trial on the remaining counts ended in a mistrial. Following a new trial, Rex was convicted. The second degree murder count was dismissed in post-trial proceedings, and Rex's conviction on the count of second degree kidnapping was reversed on appeal. *People v. Rex*, 636 P.2d 1282 (Colo. Ct.App.1981). The Colorado court concluded that Rex's statements during the September 15 interrogation were involuntary as a matter of law because "the police took advantage of [his] confused mental state and deceived him into believing that he was not a suspect in a crime." *Id.* at 1284. Following a third trial at which the involuntary statements were not introduced, Rex was again convicted of second degree kidnapping. That conviction was reversed on

appeal for reasons not relevant to the issues before us. *See People v. Rex*, 689 P.2d 669 (Colo.Ct.App., 1984), *reported in* 13 *Colo.Law.* 1051 (1984).

## II.

## SUMMARY JUDGMENT FOR TEEPLES

Rex alleges that Teeples deprived him of his constitutional rights by Teeples' actions involving the imposition of the mental hold and by his participation in obtaining the involuntary statements. The district court held that these claims do not assert constitutional deprivations remediable under section 1983. We disagree.

### A. The Mental Hold

Colorado law provides an emergency procedure under which a peace officer may, upon probable cause, place a person in an appropriate facility for a seventy-two hour treatment and evaluation when that person "appears to be mentally ill and, as a result of such mental illness, appears to be an imminent danger to others or to himself...." Colo.Rev.Stat. § 27–10–105 (1973).[1] Rex alleges in his complaint that Teeples had Rex placed on mental hold not because he appeared to be an imminent danger to himself or others, but because Teeples suspected Rex of a crime.

The propriety of the mental hold was not addressed in the proceedings below. The record is absolutely devoid of anything on this issue except Rex's allegation that Teeples conspired with the doctor to hold Rex for an improper purpose, an allegation that we must accept as true. Notably absent is any affidavit from either the doctor or Teeples describing why Rex was placed on mental hold. If, as Rex alleges, Teeples deprived Rex of his freedom by placing him under a mental hold without the probable cause required by state law and for an improper purpose, Rex was denied his liberty without due process, an injury to his constitutional rights for

---

**1.** Although this statute has since been amended, the quoted language remains unchanged. *See*  Colo.Rev.Stat. § 27–10–105 (Supp.1984).

which section 1983 provides a remedy. *See, e.g., Lessman v. McCormick,* 591 F.2d 605, 609–11 (10th Cir.1979). Accordingly, we reverse and remand for further proceedings on this claim.

### B. The Involuntary Statements

■ We also conclude that Rex has stated a constitutional claim arising from the September 15 interrogation. Extracting an involuntary confession by coercion is a due process violation. *Haynes v. Washington,* 373 U.S. 503, 513–15, 83 S.Ct. 1336, 1343–44, 10 L.Ed.2d 513 (1963); and *Spano v. New York,* 360 U.S. 315, 320–23, 79 S.Ct. 1202, 1205–07, 3 L.Ed.2d 1265 (1959). This is so notwithstanding the coercion is psychological rather than physical. *See Spano,* 360 U.S. at 323, 79 S.Ct. at 1207; *Duncan v. Nelson,* 466 F.2d 939, 944–45 (7th Cir.), *cert. denied,* 409 U.S. 894, 93 S.Ct. 175, 34 L.Ed.2d 152 (1972). Consequently, extracting an involuntary confession is actionable under section 1983. *Id.; Kerr v. City of Chicago,* 424 F.2d 1134, 1138 (7th Cir.) *cert. denied,* 400 U.S. 833, 91 S.Ct. 66, 27 L.Ed.2d 64 (1970); *Lewis v. Brautigam,* 227 F.2d 124, 128 (5th Cir.1955).

In this case Rex alleged that the improper interrogation took place while he was under the influence of carbon monoxide poisoning, and that defendants misled him and coerced his statements from him. The Colorado Court of Appeals reversed his conviction on this ground, concluding that the police had taken advantage of his mental state and had deceived him. We believe there are factual issues precluding summary judgment on this claim, particularly when we view the transcript of the taped interrogation most favorably to Rex. Indeed, at the summary judgment hearing Johnson conceded that nothing in the transcript establishes that Rex waived his right to an attorney and asked defendants to come back and talk to him. Johnson stated the existence of waiver was a matter of his, Johnson's, credibility because he knew what had happened there that day. Rec., vol. II, at 35. Moreover, the transcript shows that Rex repeatedly said, "If I do

make an attempt to incriminate myself at any time, I wish you'd get me a lawyer." Rec., supp. vol. I, at 22, 27. Under these circumstances, the issues involving the voluntariness of the statements are particularly inappropriate for resolution by summary judgment. Accordingly, we conclude that Rex has stated a constitutional due process claim arising out of the alleged coerced confession. The summary judgment on this ground is reversed.

### III.

### SUMMARY JUDGMENT FOR JOHNSON

In view of our conclusion in Part IIB *supra* that Rex has alleged a constitutional claim arising from the September 15 interrogation, we must address the district court's conclusion that Johnson, as a deputy district attorney, was absolutely immune for his part in obtaining the allegedly involuntary confession.

■ A prosecutor is absolutely immune only for those activities "intimately associated" with "initiating a prosecution [and] presenting the State's case." *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). Absolute prosecutorial immunity extends no further than necessary to protect those activities. *See Harlow v. Fitzgerald,* 457 U.S. 800, 811, 102 S.Ct. 2727, 2735, 73 L.Ed.2d 396 (1982). Consequently, a prosecutor acting as an investigator has only qualified immunity. *See id.* 457 U.S. at 811 n. 16, 102 S.Ct. at 811 n. 16. Although identifying those acts entitled to absolute immunity is not always easy, the determinative factor is "advocacy" because that is the prosecutor's main function and the one most akin to his quasi-judicial role. *See, e.g., Lerwill v. Joslin,* 712 F.2d 435, 437 (10th Cir.1983); *Gray v. Bell,* 712 F.2d 490, 500–02 (D.C.Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984).

In *Atkins v. Lanning,* 556 F.2d 485, 488 (10th Cir.1977), this court distinguished between the prosecutor's quasi-judicial role warranting absolute immunity, and his "po-

lice-related" work not accorded such immunity. We there cited cases making this distinction: *Hampton v. City of Chicago,* 484 F.2d 602, 609 (7th Cir.1973) (planning a raid to obtain evidence of criminal activity not covered by prosecutorial immunity), *cert. denied,* 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974); *Apton v. Wilson,* 506 F.2d 83, 91 (D.C.Cir.1974) (prosecutorial immunity not available when a civil rights claim "focuses on a prosecutor's actions in the course of directing police investigative activity"); and *Weathers v. Ebert,* 505 F.2d 514, 517 (4th Cir.1974) ("Making an arrest is a police function, not a judicial one ...."), *cert. denied,* 424 U.S. 975, 96 S.Ct. 1480, 47 L.Ed.2d 745 (1976). Other courts have held that the preliminary gathering of evidence which may blossom into a potential prosecution is investigatory activity receiving only a qualified immunity. *McSurely v. McClellan,* 697 F.2d 309, 320 (D.C.Cir.1982). "[A] prosecutor who assists, directs or otherwise participates with, the police in obtaining evidence prior to an indictment undoubtedly is functioning more in his investigative capacity than in his quasi-judicial capacities...." *Marrero v. City of Hialeah,* 625 F.2d 499, 505 (5th Cir.1980).

■ We conclude that giving Miranda warnings to a general suspect and participating in his interrogation is "police-related" work and does not fall within the category of a prosecutor's quasi-judicial functions. Accordingly, Johnson is entitled only to qualified immunity with respect to Rex's claims arising from the alleged coerced confession.

■ Under *Harlow,* summary judgment in favor of a defendant seeking qualified immunity is appropriate only if the constitutional standards governing the challenged conduct were not clearly established. 457 U.S. at 818–19, 102 S.Ct. at 2738–39. In this case the law with respect to involuntary confessions and the ability to knowingly waive constitutional rights was clear at the time the questioning took place. The grant of summary judgment in favor of Johnson is reversed.

This action is reversed and remanded for further proceedings.

BARRETT, Circuit Judge, dissenting:

I would affirm the district court's grant of the defendants-appellees' motion for summary judgment. Some additional undisputed facts reflected by the record should be observed.

Officer Teeples, a Loveland, Colorado police officer, was called to the hospital following Rex's suicide attempt because Rex resembled a composite drawing of a kidnapping suspect. While in the emergency room, Rex requested a minister. Teeples was also a minister and he identified himself to Rex both as a minister and as a police officer. Teeples questioned Rex briefly about the kidnapping matter. Rex was later moved to another hospital, by direction of his attending physician, and placed on a 72-hour "mental hold." All of this occurred September 14, 1977.

On September 15, 1977, Officer Teeples, out of concern, requested that Chief Deputy District Attorney Johnson come to the hospital to supervise Rex's *Miranda* advisement. Johnson did so and he determined that Rex could be interrogated. Johnson then advised Rex of his *Miranda* rights, and Rex signed a written waiver of those rights. Teeples, and to a far lesser extent, Johnson, then questioned Rex, who eventually confessed to the kidnapping.

My differences with the majority are as follows:

### A. *The Mental Hold.*

The emergency "mental hold" order was, from the record, *the action of the attending physician,* even though the action was apparently requested by Officer Teeples. Under § 27–10–105, C.R.S.1973, this action was that of a "professional person" referred to in the statute. However, the statute also authorizes the action to be taken by a peace officer. The predicate is that "when any person appears to be mentally ill and, as a result ... appears to be an imminent danger to others or to himself

....." I believe there was every reason why the propriety of the mental hold was not specifically addressed by the trial court. The justification is clear from the record.

Under the circumstances, it was wise and prudent to certify Rex to the short-term involuntary 72-hour commitment because he was *then* dangerous to himself as shown by the suicide attempt, and, given the valid suspicions held by Officer Teeples on the criminal acts of kidnapping and attempted murder, was likely dangerous to others. Dr. Franklin, a "professional" under the Colorado statute, believed that Rex should be placed on the 72-hour "mental hold." This case required a due process balancing. The action here was that recognized as valid under the subject statute by the Colorado Supreme Court in other settings. *See People v. Taylor*, 618 P.2d 1127, 1137 (Colo.1980) (En Banc) ("Passive injury to oneself, because of an inability to take care of one's most basic personal needs, may be as dangerous or damaging to the individual as the active threat posed by suicide."); *People v. Lane*, 196 Colo. 42, 581 P.2d 719 (1978).

Rex alleged that he was *detained* "without probable cause." "Probable cause" is, of course, terminology justifying the 72-hour "mental hold" under § 27–10–105, C.R.S.1973. Under Colorado law, when any person *appears* mentally ill and dangerous to *himself* or to others, "a peace officer, a professional person, or a licensed social worker ... upon probable cause may take the person into custody, or cause him to be taken into custody ... in a [designated] facility for a seventy-two-hour treatment and evaluation." § 27–10–105, C.R.S. 1973. It is beyond dispute that Rex's suicide attempt and his own alleged confused mental state indicated that he was, at the very least, a danger to himself. These circumstances alone provided the probable cause necessary to invoke the 72-hour mental hold provision.

### B. Summary Judgment for Johnson.

I cannot agree that Deputy District Attorney Johnson is entitled only to a quali-

fied (good faith) immunity when he appeared at the request of Officer Teeples to assure that Rex was properly advised of his rights under *Miranda*. I realize that the courts have "sliced" the prosecutor's functions into what they hope may be specific categories serving to identify the absolute immunity question. It *may be* helpful in certain cases. A prosecutor who accompanies police officers on routine investigative work without any specific objective in mind is involved in routine police "investigative" work. Such is not the case here. Johnson appeared at the request of Officer Teeples to *assure* (because Officer Teeples asked for help) that the mandates of *Miranda* were met *before* general police interrogation. Such is investigation in the broad sense of law enforcement activity. Not all interrogation is investigative in the sense of "police work" in a particular scenario. I am not willing to attempt to slice the prosecutor's activities into neat niches. For example, in *Lerwill v. Joslin*, 712 F.2d 435 (10th Cir.1983), although we said that the prosecutor was acting as an *advocate* before the neutral magistrate, the fact is that he prepared the arrest warrant. Thus, the prosecutor was involved in "investigative" activities necessary to his preparation of the arrest warrant simply because he had to be prepared to establish probable cause. The same is true of a search warrant or a recommendation for bail when a prosecutor appears before the magistrate. He advocates, but he has been and always must be involved in "investigative" work prior thereto.

Johnson was doing exactly what *Imbler v. Pachtman*, 424 U.S. 409, 431 n. 33, 96 S.Ct. 984, 995 n. 33, 47 L.Ed.2d 128 (1976), contemplated, i.e., properly *obtaining* evidence:

> We recognize that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. A prosecuting attorney is required constantly, in the course of his duty as such, to make

decisions on a wide variety of sensitive issues. These include questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present. *Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.* At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court. [Emphasis supplied.]

The concurring opinion of Mr. Justice White in *Imbler* (joined by Justices Brennan and Marshall) cites with approval the rule that a prosecutor is absolutely immune from suit even for malicious prosecution. 424 U.S. at 437, 438, 96 S.Ct. at 998, 999. In deciding whether or not to prosecute, the prosecutor performs a "quasi-judicial" function. This, I submit, requires that the prosecutor act in "obtaining, reviewing, and evaluating the evidence." 424 U.S. at 431, 96 S.Ct. at 995, *supra. See also Forsyth v. Kleindienst,* 599 F.2d 1203 (3rd Cir.1979), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981). In *Atkins v. Lanning,* 556 F.2d 485, 488 (10th Cir.1977), we recognize that a prosecutor must be accorded leeway in performing the function of assembling the state's case and that some investigative work is a necessary part of the prosecutor's preparation of the case. In my view the record supports the trial court's finding that Deputy Johnson was entitled to absolute immunity.

### C. Summary Judgment for Teeples.

Rex's involuntary statement was introduced into evidence at his first trial. It is unclear from the record whether Deputy Johnson acted as prosecutor in that trial, but assuming that he did, his adjudicative function in introducing the confession entitled him to absolute immunity against civil rights claims. *Imbler v. Pachtman, supra* 424 U.S. at 430–31, 96 S.Ct. at 995–96 (1976). Although Officer Teeples does not enjoy a similar immunity against § 1983 claims, there is no evidence supporting Rex's allegation that Teeples "caused" the constitutional deprivation.[1] Teeples took Rex's confession only after being informed by Deputy Johnson that Rex had been properly advised of his *Miranda* rights and that he had waived those rights. The decision to introduce Rex's confession was made, not by Teeples, but by the prosecutor. The decision to admit the evidence was made, not by Teeples, but by the judge. In my view, these factors constituted intervening factors sufficient to preclude a finding that Teeples caused the involuntary confession to be used against Rex. *See generally Duncan v. Nelson,* 466 F.2d 939, 942 (7th Cir.1972), *cert. denied,* 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 152 (1972); *Jackson v. Dillon,* 518 F.Supp. 618, 622 (E.D.N.Y.1981).

It would be sadly ironic if Officer Teeples could somehow be held liable under § 1983 on the basis of his dealings with Rex. It should be recalled that Officer Teeples asked Deputy Johnson to come to the hospital to insure that Rex was properly advised of his *Miranda* rights. Johnson, seeking to assist Officer Teeples, attempted to perform this function and indeed informed Teeples that the proper procedures had been followed. Such efforts on behalf of the police and prosecutors are commendable. To hold Officer Teeples liable on these facts because the Colorado Court of

---

**1.** Traditional tort analysis dictates that another defendant's actions may constitute an intervening cause of plaintiff's injury and thus break the chain of causation so as to relieve the initial actor of liability if the latter defendant's actions were unforeseeable. Prosser, *Law of Torts,* 281–86 (4th ed. 1971). Courts in civil rights cases have generally followed this approach. *See Ames v. United States,* 600 F.2d 183, 185 (8th Cir.1979); *Dellums v. Powell,* 566 F.2d 167, 192 (D.C.Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); *Rodriguez v. Ritchey,* 556 F.2d 1185, 1193 (5th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978); *Hoffman v. Halden,* 268 F.2d 280, 296–97 (9th Cir.1959); *Soto v. City of Sacramento,* 567 F.Supp. 662, 688 (D.C.Cal.1983).

Appeals subsequently found Rex's confession involuntary would in my view, be unjust. For the above-stated reasons I would hold that the district court did not err in granting the defendants' motion for summary judgment.