HARTZ, Circuit Judge.
The federal civil-rights statute, 42 U.S.C. § 1983, authorizes suits against persons acting under color of state law for violations of rights granted by federal law. But under modern doctrine the defendant is not personally liable in damages for every violation of such rights. Wary of the damage to public welfare if government officers were deterred and distracted from vigorous performance of their duties by excessive exposure to litigation, the courts have provided them qualified immunity from suit despite their violations of federal law unless the unlawfulness of their actions has been clearly established by the time they act. This much is settled law.
The appeal before us raises a related issue that is not settled in this circuit. Say the violation of federal law was not clearly established, but under state law the action was unauthorized. Does a public officer lose the protection of qualified immunity when he acts outside the scope of his authority? Is there any justification for granting immunity in that context? The answer is not an easy one, as suggested by the division within this panel. Judge Holmes would not recognize a scope-of-authority exception to qualified immunity. *1212 Judge Matheson would not address whether the exception should be recognized or, if it were recognized, what the scope of the exception should be, because, in his view, the parties agree that the exception should apply and that the defendant’s lack of authority must be clearly established. The author likewise would not decide whether to recognize or reject a scope-of-authority exception but would hold that were this court to recognize a scope-of-authority exception to qualified immunity, the lack of authority under state law would have to be clearly established at the time of the challenged action.
In this case the district court endorsed the scope-of-authority exception to qualified immunity and ruled that Defendant Donald Gallegos, a district attorney, had clearly acted without state-law authority in forcibly removing a barrier that Plaintiff David Stanley had placed on a road to prevent traffic through his property. It therefore held that Defendant could not invoke the protection of qualified immunity. Exercising jurisdiction under 28 U.S.C. § 1291, the panel reverses and remands to the district court for farther consideration of whether Defendant violated clearly established federal law or is instead entitled to qualified immunity.
I. BACKGROUND
Plaintiff owns property traversed by Red Hill Road, which has been used by the public to access White Peak, a popular hunting and wildlife area in northern New Mexico. Believing the road to be private, Plaintiff installed a cattle guard, locked gate, and barbed-wire fence to prevent access to his land. Believing the road to be a public right-of-way, Defendant wrote to Plaintiff on August 3, 2011, demanding that the gate be removed. The next week Plaintiff filed a still-pending quiet-title action in state court to determine whether the road is private or public. After three weeks with no response from Plaintiff, Defendant took matters into his own hands. Accompanied by a former president of the New Mexico Wildlife Federation, four deputy sheriffs, and 18 private persons, Defendant cut the lock on the gate and, with the help of others, removed the barbed wire and T-posts from the road. When Defendant learned a few weeks later that Plaintiff had locked the gate a second time, Defendant directed the local sheriff to cut the lock and chain on the gate.
In December 2011, Plaintiff brought this suit under § 1983 in the United States District Court for the District of New Mexico. He claimed that Defendant violated his Fourth, Fifth, and Fourteenth Amendment rights by unlawfully seizing his personal property and creating a public right-of-way without due process of law. Defendant moved for summary judgment on the ground of qualified immunity. The district court, concluding that Defendant had clearly overstepped his state-law authority as a district attorney, denied the motion. Defendant appeals the denial.
II. JURISDICTION AND STANDARD OF REVIEW
Under 28 U.S.C. § 1291, appellate jurisdiction is limited to the review of final decisions. See Attocknie v. Smith, 798 F.3d 1252, 1256 (10th Cir. 2015). Ordinarily, a decision is not final unless all issues are disposed of and the court is left with nothing to do but execute the judgment, see id. so denials of summary judgment are not final. But, for reasons that need not be reviewed here, an order denying a summary-judgment motion asserting qualified immunity is considered a final, appeal-able decision so long as the appeal raises only abstract legal questions. See id. This court’s review of the denial is de novo. See Quinn v. Young, 780 F.3d 998, 1004 (10th Cir. 2015).
*1213 III. QUALIFIED IMMUNITY/SCOPE-OF-AUTHORITY TEST
The federal civil-rights statute appears to be categorical in stating that “[e]very person who, under color of [law] subjects ... any ... person ... to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law....” 42 U.S.C. § 1983 (emphasis added). But at the time of its enactment in 1871 the common law recognized certain protections from liability for government actors, and the Supreme Court has “recognized similar immunities under § 1983, reasoning that common law protections well grounded in history and reason had not been abrogated by covert inclusion in the general language of § 1983.” Filarsky v. Delia, 566 U.S. 377, 132 S.Ct. 1657, 1662, 182 L.Ed.2d 662 (2012) (internal quotation marks omitted) (private attorney hired by city entitled to qualified immunity). In determining the applicability and scope of immunity, courts “look to the general principles of tort immunities and defenses applicable at common law, and the reasons [the Supreme Court has] afforded protection from suit under § 1983.” Id. (internal quotation marks omitted).
The starting point for the analysis is ordinarily the common law of 1871. See id. An analysis of the law and practice at that time is sometimes nearly dispositive, as in Filarsky, which noted how common it was then for public officials to be only part-time. See id. at 1662-65. In this case, however, the principal guidance must come from more recent Supreme Court decisions addressing qualified immunity. This is for two reasons. First, in my view, Supreme Court opinions virtually compel the conclusion that a scope-of-authority exception to qualified immunity would, if adopted, need to be limited to actions that were clearly established by state law to be beyond the official’s authority. This court would be remiss in its duty as a lower court if it rejected the reasoning of the Supreme Court based on a contrary understanding of history. Second, the early cases are not relevant to the peculiar issue before us. None that I have found presented the interplay between the laws of two sovereigns—the law of one sovereign governing the elements of liability and the law of a different sovereign governing the scope of the defendant’s official authority. When that interplay arose before the Supreme Court in Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (violation of state regulation did not deprive state official of protection of qualified immunity in action under § 1983), an opinion to be examined below, the Court looked to general principles of immunity law without citing common-law precedents on the subject.
I therefore turn to the policy reasons that support and limit the doctrine of qualified immunity. The foremost reason for the doctrine is the concern that fear of litigation would deter and distract public officials from “the unflinching discharge of their duties.” Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks omitted); see Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (“Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.”); Wyatt v. Cole, 504 U.S. 158, 167, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (“Qualified immunity strikes a balance be tween compensating those who have been injured by official conduct and protecting government’s ability to perform its traditional functions”). As initially developed, *1214 immunity required satisfaction of both objective and subjective components — public officials were not entitled to qualified immunity unless they acted reasonably and in good faith. See Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); Scheuer v. Rhodes, 416 U.S. 232, 247-48, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). But the Supreme Court later abandoned the subjective prong, deciding that a fact-intensive inquiry into an official’s state of mind was incompatible with the need to avoid excessively disruptive discovery and litigation. See Harlow, 457 U.S. at 815-18, 102 S.Ct. 2727. Instead the test became a purely objective one, asking only whether a clearly established right had been violated. See id. at 818, 102 S.Ct. 2727.
One recurring issue has been how to apply this doctrine when a state employee was apparently acting outside of his or her authority under state law. When the employee is so acting, the rationale for qualified immunity may not seem to apply. Qualified immunity shields officials from the distractions of frivolous litigation, allowing them to effectively discharge their duties for the public good. But why worry about causing the employee to flinch when the employee’s actions do not come within the job description? One could conclude that when officials are no longer acting with official authority, they are just like private citizens, so the doctrine of qualified immunity should not apply. See Harbert Int'l., Inc. v. James, 157 F.3d 1271, 1281 (11th Cir. 1998). After all, the Supreme Court has declared that some private persons liable under § 1983 (because they are acting under color of state law) are not protected by qualified immunity. See Richardson v. McKnight, 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) (guards at private prison not entitled to qualified immunity); Wyatt, 504 U.S. at 168, 112 S.Ct. 1827 (qualified immunity not available to private persons who invoked state replevin law later declared unconstitutional); cf. Filarsky, 132 S.Ct. 1657 (private attorney retained by city entitled to qualified immunity). Why not provide the same treatment to a government employee who has no official sanction to be involved in the activity for which § 1983 liability is alleged? Perhaps it is not surprising that over half the circuit courts of appeal appear to have recognized a scope-of-authority exception to the protection of qualified immunity. See, e.g., Shechter v. Comptroller of City of New York, 79 F.3d 265, 268-69 (2d Cir. 1996); In re Allen (Allen I), 106 F.3d 582, 587 (4th Cir. 1997); Rheaume v. Texas Dep’t of Public Safety, 666 F.2d 925, 930 (5th Cir. 1982); Rich v. City of Mayfield Heights, 955 F.2d 1092, 1095 (6th Cir. 1992); Merritt v. Mackey, 827 F.2d 1368, 1373 (9th Cir. 1987); Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995); Gray v. Bell, 712 F.2d 490, 502 n.36 (D.C. Cir. 1983); see also Cox v. Cache Cty., 664 Fed.Appx. 703, 705-06 (10th Cir. 2016) (unpublished); Robbin v. City of Santa Fe, 583 Fed.Appx. 858, 864-65 (10th Cir. 2014). None have explicitly rejected the exception. These decisions find support in the intuition that a public official still has a private persona and when acting in that capacity the official should not be protected by qualified immunity any more than a private person would be. The scope-of-authority exception provides a natural place to draw the line between an official’s two personas.
On the other hand, the focus of § 1983 is federal law, not state law. Why should qualified immunity under that provision depend on whether the government employee complied with state law? That appears to be the lesson of Davis, in which the plaintiff sued state officials under § 1983 for unlawfully terminating his employment. See 468 U.S. at 186-87, 104 S.Ct. 3012. The Supreme Court rejected the plaintiffs argument that the defendants were not entitled to qualified immunity *1215 because they failed to comply with a state regulation governing employee discharges. See id. at 193-96, 104 S.Ct. 3012. It reasoned that under the plaintiffs approach, “officials would be liable in an indeterminate amount for violation of any constitutional right — one that was not clearly defined or perhaps not even foreshadowed at the time of the alleged violation — merely because their official conduct also violated some statute or regulation.” Id. at 195, 104 S.Ct. 3012. Further, “in § 1983 suits, the issue whether an official enjoyed qualified immunity then might depend upon the meaning or purpose of a state administrative regulation, questions that federal judges often may be unable to resolve on summary judgment.” Id. The Court reiterated that qualified immunity may be overcome “only by showing that [the federal rights in question] were clearly established at the time of the conduct at issue.” Id. at 197,104 S.Ct. 3012.
No binding precedent of this court has adopted the scope-of-authority exception to qualified immunity. Despite the apparent endorsement of the exception by most other circuits, I think we should be quite circumspect before embracing it. To begin with, it is unclear how to draw the line between conduct that violates state law (which Davis said is irrelevant to qualified immunity) and conduct that is unauthorized by state law (which is the purview of the scope-of-authority exception). The federal appellate cases invoking a “scope of authority” exception do not define the term. Nor does it appear to be a commonly used term of art in other contexts. As a matter of English usage, one might say that a state official acts beyond the scope of authority if he fires an employee without first giving him the opportunity to respond in wilting, as required by state law. But Davis held that this misconduct was just a violation of state law that did not deprive the official of the protection of qualified immunity. See id. at 188, 104 S.Ct. 3012. This suggests that an official’s scope of authority should be interpreted broadly. For example, the Arizona Court of Appeals stated in a § 1983 case that a “prosecutor’s ‘scope of authority’ includes those activities with some connection to the general matters committed to the prosecutor’s control or supervision.” State v. Superior Court, 186 Ariz. 294, 921 P.2d 697, 700 (App. 1996). Perhaps scope of authority should be defined similarly to scope of employment, a term used in assessing whether a principal should be liable for the acts of an agent. In that context, “[CJonduct is not outside the scope of employment merely because an employee disregards the employer’s instructions.” Restatement (Third) Agency § 7.07 cmt. c. The analog to that proposition here would be that a public official could be acting within the scope of authority while violating state law (the official’s instructions from the sovereign). But once it is accepted that an act prohibited by state law can be within the scope of the official’s authority, how far should one go? Even under the well-developed common law construing scope of employment, questions about the boundaries of the term generate substantial litigation. The opportunity for (the risk of) litigation of the meaning of scope of authority is obvious. Difficult line-drawing questions are inevitable. Consider, for example, a suit against an animal-control officer under § 1983 for arresting the owner of an animal. If the arrest was for a misdemeanor and state law permits such an officer to arrest a person only for a felony, has the officer acted outside the scope of authority (so that the scope-of-authority exception applies), or has the officer merely violated state law (so that under Davis the officer is still entitled to qualified immunity)? What if state law gives animal-control officers no power of arrest whatsoever? One must pause before adopting a doctrine of such uncertain scope that is so *1216 in tension with controlling Supreme Court authority.
Further, when the Supreme Court rejected qualified immunity for certain private parties (acting under color of state law), it emphasized essential differences between private citizens and government officials that apply regardless of whether the official was acting within the scope of authority. First, it said, “private parties hold no office requiring them to exercise discretion; nor are they principally concerned with enhancing the public good. Accordingly, extending Harlow qualified immunity to private parties would have no bearing on whether public officials are able to act forcefully and decisively in their jobs or on whether qualified applicants enter public service.” Wyatt, 504 U.S. at 168,112 S.Ct. 1827. Second, “unlike with government officials performing discretionary functions, the public interest will not be unduly impaired if private individuals are required to proceed to trial to resolve their legal disputes.” Id. Both differences suggest that the type of dispute before us be treated as one involving a government official. Even if Defendant was exceeding his authority, the action was on a matter of public interest, not a purely personal concern. And this litigation will distract Defendant from performing official duties regardless of the grounds for the claims and defenses.
An additional concern raised in Davis also has purchase here. One reason the Court rejected consideration of state-law violations in determining whether an official enjoyed qualified immunity was that the federal court might then need to determine “the meaning or purpose of [state law], questions that federal judges often may be unable to resolve on summary judgment.” Davis, 468 U.S. at 195, 104 S.Ct. 3012. As Judge Luttig wrote for half the active members of the Fourth Circuit in arguing against adoption of the scope-of-authority exception: “The federal courts ... will now be obliged to conduct what will essentially be mini-trials on the question of whether the defendant was acting within the scope of his state law duties, a responsibility which will require these federal officers to immerse themselves in the intricacies of state [law].” In re Allen (Allen II), 119 F.3d 1129, 1137 (4th Cir. 1997) (Luttig, J., dissenting from denial of rehearing en banc).
Taking into account all these concerns about the scope-of-authority exception, I conclude that if the exception were to be adopted, it should be limited to cases in which there was clearly established state law that the government official’s actions exceeded the scope of authority. Any less stringent standard would pose too great a risk of deterring public officials from vigorously performing their duties, embroil them in excessive litigation that would distract them from their duties, and overly complicate and delay litigation by requiring federal courts to become expert in state law. See Allen I, 106 F.3d at 592-93 (adopting clearly-established-law requirement for scope-of-authority exception). So limiting the possible scope-of-authority exception is as far as this court need go to resolve the appeal before us, because New Mexico law did not clearly establish that Defendant exceeded his authority as district attorney.
IV. Authority of District Attorney
Plaintiff contends that the law was clearly established that Defendant’s actions were beyond the scope of his authority. He concedes that preventing obstructions to roads is a legitimate function of a district attorney but argues that the means used by Defendant were inappropriate because a district attorney can properly act only through legal process, not by taking matters into his own hands. *1217 According to Plaintiff, the only means available to Defendant were filing criminal charges, participating in a quiet-title suit, or seeking a temporary restraining order in an emergency. I am not persuaded. Under any reasonable construction of the term scope of authority, Defendant did not exceed its clearly established bounds.
Because there is little New Mexico law on point, I begin with legal background from other sources. In the federal courts it is widely accepted that prosecutors possess investigative and police-like power, even though this is not quasi-judicial power for which prosecutors have absolute immunity. When civil-rights claims are brought against prosecutors based on investigative or police-like actions, courts allow the prosecutors to invoke qualified immunity— without any suggestion that a prosecutor has no business engaging in police-like actions.
There are at least two such opinions from this circuit. In Rex v. Teeples, 753 F.2d 840 (10th Cir. 1985), a district attorney was sued for allegedly extracting an involuntary confession while the plaintiff was in a confused mental state. See id. at 841-42. The court rejected a claim of absolute prosecutorial immunity, which depends largely on whether the prosecutor is engaged in advocacy, see id. at 843, because “giving Miranda warnings to a general suspect and participating in his interrogation is ‘police-related’ work and does not fall within the category of a prosecutor’s quasi-judicial functions,” id. at 844. But it held that “a prosecutor acting as an investigator has ... qualified immunity.” Id. at 843. Similarly, in a case involving an alleged false arrest, this court acknowledged that a prosecutor has both a “quasi-judicial capacity” and an “investigative or police-related role.” Atkins v. Lanning, 556 F.2d 485, 488 (10th Cir. 1977) (internal quotation marks omitted). Other circuits have expressed a similar view. See Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1280 (11th Cir. 2002) (“When a prosecutor steps out of the role of advocate and into the role of investigator, for example by participating in a search, he is performing a discretionary governmental function, and thus may be entitled to qualified immunity.”); Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990) (“When a prosecutor is engaged in administrative or investigative activities, he is entitled only to qualified immunity, which requires a showing that his acts were objectively reasonable.”).
Most notably, the Supreme Court, too, has recognized that prosecutors may have police-like functions. In Buckley v. Fitzsimmons, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), the Court acknowledged that prosecutors may “perform[j the investigative functions normally performed by a detective or police officer,” such as “plan[ning] and executing] a raid on a suspected weapons cache,” for which they are entitled only to qualified immunity. Id. at 273-74, 113 S.Ct. 2606. Given these judicial statements, I cannot presume that the authority of district attorneys in New Mexico is as restricted as Plaintiff contends. He must point to clear support for his view if he is to prevail,[1] but he has failed to do so. If anything, the law in New Mexico suggests Plaintiff is wrong.
To be sure, Plaintiff is correct that New Mexico positive law does not explicitly convey the authority to do what Defendant did. The New Mexico Constitution says only that each district attorney is “the law officer of the state and of the counties *1218 within his district, ... and shall perform such duties ... as may be prescribed by law.” N.M. Const, art. VI, § 24. And the pertinent provision in the statute setting forth the duties of district attorneys says only that they shall “prosecute and defend for the state in all courts of record of the counties of his district all cases, criminal and civil, in which the state or any county in his district may be a party or may be interested.” N.M. Stat. Ann. § 36-1-18(A)(1) (2016).[2] These provisions, however, have been construed broadly by the state judiciary. In Candelaria v. Robinson, 93 N.M. 786, 606 P.2d 196 (Ct. App. 1980), a district attorney wrote a letter to the sheriffs department recommending that the plaintiff be fired for his use of “highly improper gestapo-type tactics” that led to the prosecution and conviction of four innocent men for a capital crime. Id. at 199. (By the time of the letter the men had been exonerated and the real culprit had been convicted and sentenced. See id.) The plaintiff sued the district attorney for defamation. See id. The court acknowledged that absolute attorney immunity was not appropriate because the alleged defamation occurred after the conclusion of legal proceedings. See id. at 199-200. But it held that the district attorney was still entitled to immunity under the New Mexico Tort Claims Act because his actions fell within his “scope of duties.” Id. at 200-202; see also id. at 200 (“ ‘Scope of duties’ means performing any duties which a public employee is requested, required or authorized to perform by the governmental entity regardless of the time and place of performance!)]” (quoting N.M. Stat. Ann. 1978, § 41-4-3(F)) (brackets omitted)). The court began with the proposition that “New Mexico district attorneys’ constitutional and statutory duties include duties incidental and necessary to the discharge of duties prescribed by the Constitution or statutes.” Candelaria, 606 P.2d at 201. It then gave an expansive interpretation to the term law officer as used in Art. VI, § 24 of the state constitution: “[A]s law officer, the district attorney may take action in the public interest” and “a district attorney has an implied duty to act as an advocate of the State’s interest in the protection of society.” Id. at 202 (internal quotation marks omitted). It concluded that the letter recommending the plaintiffs termination “was incidental to the district attorney’s duty as law officer to advise on legal matters in the public interest and in the protection of society.” Id.
In light of the above authority, I cannot say that Defendant’s conduct was beyond the scope of his authority under clearly established New Mexico law. His actions must be considered in context. Plaintiff asserts that Defendant needed court authority to halt a blockade of a road. But if someone were intentionally blocking an interstate highway, surely the district attorney could instruct law-enforcement officers to remove the obstruction without first waiting for a court order. Although Plaintiff argues that there was no emergency here, this does not go to Defendant’s scope *1219 of authority, but to whether the action was constitutional. See Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004) (“[I]n assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures in general is a part of his job-related powers and responsibilities.”).[3] Plaintiff therefore cannot escape qualified-immunity doctrine under the scope-of-authority exception.
Plaintiff argues in his appellate brief that even if his scope-of-authority argument fails, he has shown that Defendant is not entitled to qualified immunity because Defendant’s acts violated clearly established constitutional law. But because the district court has not addressed the issue, this court should follow its general practice of having such matters first resolved by the district court. See Trans-Western Petroleum, Inc. v. United States Gypsum Co., 830 F.3d 1171, 1175 (10th Cir. 2016) (“As a general rule, a federal appellate court does not consider an issue not passed upon below.” (internal quotation marks omitted)).
V. CONCLUSION
We REVERSE the district court’s denial of summary judgment and REMAND for further proceedings to determine whether Defendant violated clearly established federal law.

. Of course, the legal issue is ultimately for this court to resolve. But the circuit has consistently held that once the defense of qualified immunity is raised, the plaintiff has the initial burden of directing the court to supporting authority. See Gutierrez v. Cobos, 841 F.3d 895, 901-02 (10th Cir. 2016).

. § 36-1-18(A) states in full:
Each district attorney shall:
(1) prosecute and defend for the state in all courts of record of the counties of his district all cases, criminal and civil, in which the state or any county in his district may be a party or may be interested;
(2) represent the county before the board of county commissioners of any county in his district in all matters before the board whenever requested to do so by the board, and he may appear before the board when sitting as a board of equalization without request;
(3) advise all county and state officers whenever requested; and
(4) represent any county in his district in all civil cases in which the county may be concerned in the supreme court or court of appeals, but not in suits brought in the name of the state.

. Plaintiff does not máke an argument distinguishing between Defendant’s acting personally by cutting the bolt and his directing others to perform the task. But in any event, he has not pointed to any authority supporting that distinction in this context — that is, authority allowing a district attorney to tell a law-enforcement officer to do something that he cannot participate in personally. It is noteworthy that in Rex the prosecutor asked questions during the interrogation. See 753 F.2d at 841-42. There is certainly no clearly established New Mexico law stating that a prosecutor could not lend a hand to law-enforcement officers performing a task at his direction, such as removing obstructions from a highway.