George McKAY, Plaintiff-Appellant,

v.

Dayle HAMMOCK, individually and as Detective and Deputy Sheriff for Routt County, Colorado; Nick DeLuca, Sheriff, Routt County, Colorado; Lieutenant J.W. Pfeffer, individually and as an Officer of the Ruidoso City Police Department, Ruidoso, New Mexico; Ruidoso City Police Department, Ruidoso, Lincoln County, New Mexico; and Routt County Sheriff's Office, Routt County, Colorado, Defendants-Appellees.

No. 82–2007.

United States Court of Appeals, Tenth Circuit.

March 30, 1984.

Rehearing Denied May 14, 1984.

Jerre W. Dixon of Dixon & Snow, Denver, Colo., for plaintiff-appellant.

Joseph E. Earnest, Santa Fe, N.M. (Bruce L. Herr and Bradford V. Coryell, Santa Fe, N.M., with him on the briefs), of Montgomery & Andrews, P.A., Santa Fe, N.M., for defendants-appellees D.W. Pfeffer and the Ruidoso City Police Dept.

Thomas J. Chamberlin of Ratcliffe & Chamberlin, Steamboat Springs, Colo., for defendants-appellees Dayle Hammock, Nick DeLuca, and the Routt County Sheriff's Office.

Before SETH, Chief Judge, and HOLLOWAY, McWILLIAMS, BARRETT, DOYLE, McKAY, LOGAN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

George McKay brought this suit asserting claims under 42 U.S.C. § 1983 (1976)[1] against the Routt County, Colorado Sheriff's Office, sheriff Nick DeLuca, deputy sheriff Dayle Hammock, the Police Department of Ruidoso, New Mexico, and Ruidoso police officer David Pfeffer. McKay alleges that defendants unconstitutionally deprived him of his liberty without due process by causing him to be wrongfully arrested, and that after the arrests the Colorado defendants harrassed him to prevent him from filing this lawsuit. McKay also asserts state law claims for relief based on common law false imprisonment. The district court, 542 F.Supp. 972 (D.C.Colo.1982), granted defendants' motion for summary judgment on the ground that all claims are barred by the applicable statutes of limitations. The court alternatively held that the action properly could be dismissed for failure to state a claim under the authority of *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). We reverse in part and affirm in part.

## I.

### THE STATUTE OF LIMITATIONS

The district court held that McKay's causes of action accrued on July 5, 1979, at the end of the alleged wrongful confinement.[2] This suit was filed on September 17, 1981, a little over two years and two months later. The court found that the applicable state statute of limitations is the one-year period for false imprisonment provided by Colo.Rev.Stat. § 13–80–102 (1973), and that this period was extended to two years for actions on a liability created by a federal statute under Colo.Rev.Stat. § 13–80–106 (1973). Accordingly, the court held that the state common law claims are barred by the one-year statute and the constitutional claims are barred by the two-year statute.

Because Congress has not enacted a statute of limitations expressly applicable to section 1983 claims, the court must adopt the most analogous limitations period provided by state law. *See* 42 U.S.C. § 1988 (1976); *Board of Regents v. Tomanio*, 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980). In *Garcia v. Wilson*, 731 F.2d 640 (10th Cir.1984) (en

---

1. McKay's complaint also asserted claims under 42 U.S.C. § 1981 (1976). However, McKay conceded below that he failed to state a claim under that section.

2. McKay disputes this finding and argues that the action did not accrue until after August 20, 1981, when the alleged police harassment stopped. Given our disposition of the statute of limitations issue, which renders McKay's claim timely even if his causes of action accrued on the earlier date, we need not decide this issue.

banc), decided this day, we considered the method by which an appropriate state statute is to be selected for section 1983 actions. We concluded as a matter of federal law that all section 1983 claims should be characterized as actions for injury to the rights of another. *See id.* at 650–51.

Colorado has no statute of limitations expressly applicable to injuries to the rights of another. Although the Colorado Code of Civil Procedure has abolished the distinctions between the old common law forms of action, *see McKenzie v. Crook,* 110 Colo. 29, 129 P.2d 906, 907 (1942), those differences are still reflected in the state limitations scheme. Thus, the "antiquated language" of the limitations statutes compels the court "to determine what the action would have been in terms of early common law pleading." *Uhl v. Fox,* 31 Colo.App. 13, 498 P.2d 1177, 1178 (1972); *Hayden v. Patterson,* 39 Colo. 15, 88 P. 437, 437–38 (1907).

The Colorado limitations statutes embody the common law distinction between trespass actions, which involve injury by the direct and immediate application of force, and actions on the case, in which the injury is committed without direct force. *See,* W. Prosser, Law of Torts § 7, at 28–30 (4th ed. 1971); *see also, e.g., Zuniga v. AMFAC Foods, Inc.,* 580 F.2d 380, 386–87 & n. 8 (10th Cir.1978). Under Colorado law, actions for assault and battery and false imprisonment are subject to the one-year period provided by Colo.Rev.Stat. § 13–80–102 (1973), and actions on the case are subject to the six-year period provided in Colo.Rev. Stat. 13–80–110 (1973).[3]

Section 1983 claims may or may not involve the direct application of force. That distinction rests on factors irrelevant to the elements of a section 1983 cause of action and requires an analysis of the facts underlying a particular claim, an approach we rejected in *Garcia.* Under the rationale in *Garcia,* state limitations periods that make such an irrelevant distinction determinative are not applicable to a section 1983 claim.

 It is thus apparent that no one Colorado limitations statute is applicable to an action for injury to the rights of another, as we have now defined section 1983 claims. Accordingly, we conclude that the appropriate statute of limitations for all such claims brought in federal court in Colorado is the residuary statute, Colo.Rev. Stat. § 13–80–108(1)(b) (1973), which applies a three year period to "[a]ll other actions of every kind for which no other period of limitation is provided by law." Under this statute, McKay's section 1983 claims are timely.[4]

## II.

### THE ARRESTS

Having determined that McKay's constitutional claims were timely filed, we next address the district judge's alternate holding that McKay failed to state a claim upon which relief may be granted. The court stated that McKay's "§ 1983 and 14th Amendment claims fall within the Supreme Court's proscription in *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433

---

3. The Colorado statute of limitations provides in relevant part:

 "13–80–102. *Actions barred in one year.* All actions for assault and battery, false imprisonment, slander, and libel shall be commenced within one year after the cause of action accrues, and not afterwards.
 "....
 "13–80–110. *Actions barred in six years.* (1) Except as otherwise provided in section 4–2–725, C.R.S.1973, the following actions shall be commenced within six years after the cause of action accrues, and not afterwards:
 "....

 "(d) All actions of assumpsit, or on the case founded on any contract or liability, express or implied."

4. The court did not specifically address McKay's allegation that, subsequent to the wrongful arrests, members of the Routt County Sheriff's Office violated his constitutional rights by harassment to prevent him from filing this lawsuit. Under our resolution of the statute of limitations issue, this section 1983 claim is timely. However, we affirm the district court's conclusion that McKay's state law claims are barred by the one-year Colorado statute for false imprisonment.

(1979)," rec., vol. I, at 119, but did not set out the facts and analysis upon which this conclusion was based.

In *Baker,* the plaintiff's brother had been arrested, booked, and released on bail in Potter County, Texas, while masquerading as the plaintiff and using his driver's licence. Bail subsequently was revoked, and an arrest warrant was issued for the plaintiff's brother in the plaintiff's name. When the plaintiff was stopped in Dallas for a traffic violation, a routine check revealed the warrant in the plaintiff's name and he was arrested despite his protests of mistaken identity. The plaintiff was held by the Dallas police four days, and then transferred to the Potter County jail, where he was held another four days before officials recognized the error and released him. The plaintiff brought a section 1983 claim against the Potter County sheriff for " 'the intentional failure to investigate and determine that the wrong man was imprisoned.' " *Baker,* 443 U.S. at 143, 99 S.Ct. at 2694 (quoting Brief for Respondent at 12). The plaintiff did not challenge the initial arrest but only the subsequent continuing incarceration. Moreover, the plaintiff did not allege that the state officials intentionally had continued to detain him knowing that the arrest warrant named the wrong man.

The Fifth Circuit concluded that the plaintiff had stated a claim under section 1983 "even though the evidence supported no more than a finding of negligence on the part of Sheriff Baker." *Id.* at 139, 99 S.Ct. at 2692. In reversing the Court of Appeals decision, the Supreme Court did not address whether simple negligence may be the basis for liability in a section 1983 cause of action. Instead, the Court held that the plaintiff had failed to establish the threshold requirement of section 1983, the deprivation of a constitutional right. The Court concluded that the plaintiff's eight day confinement had not denied him liberty without due process, basing this conclusion primarily upon the propriety of the initial arrest.

In view of the factually specific language employed by the Court in *Baker,* the extent to which that case provides precedential value beyond closely analogous circumstances is unclear. Subsequent cases have found the holding in *Baker* inapposite when the arrest warrant itself was invalid, see, e.g., *Garris v. Rowland,* 678 F.2d 1264, 1270 (5th Cir.), *cert. denied,* 459 U.S. 864, 103 S.Ct. 143, 74 L.Ed.2d 121 (1982); *Powe v. City of Chicago,* 664 F.2d 639, 647–48 (7th Cir.1981), or when the injury was inspired by improper motive rather than the result of carelessness or honest mistake. See, e.g., *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981); *Whitley v. Seibel,* 613 F.2d 682, 686 (7th Cir.1980); *Reeves v. City of Jackson,* 608 F.2d 644, 650–52 (5th Cir.1979). We must examine the record before us bearing in mind both the considerations the Court found determinative in *Baker,* and any factual distinctions that would make those considerations inapplicable in the instant case.

On a motion for summary judgment, the pleadings and the evidence must be construed in the light most favorable to the opponent of the motion. *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980). Viewed in this light, the following facts and allegations describe the circumstances giving rise to McKay's claims and provide a framework for determining whether *Baker* controls our consideration of McKay's request for relief under section 1983.

In April 1979, Officer Pfeffer swore out a criminal complaint against McKay in New Mexico for issuing worthless checks and for forgery. A New Mexico judicial official issued a valid warrant for McKay's arrest, and Pfeffer entered the arrest warrant in the National Crime Information Center (NCIC) computer.

On June 21, 1979, Deputy Sheriff Hammock arrested McKay in Routt County for being in possession of an automobile listed as stolen by Texas authorities. Although the Texas authorities eventually decided not to prosecute, McKay apparently was held in Routt County on the Texas charges until June 29, 1979. During this time,

Routt County officials discovered the existence of the New Mexico warrant through the NCIC computer. Hammock notified Pfeffer, and learned that Pfeffer wanted to extradite McKay. Hammock then had a warrant of commitment on the New Mexico charges filed in Routt County on June 29, 1979. Under Colorado law, McKay could only be held for 72 hours after this warrant was filed unless Colorado officials filed a fugitive complaint. The Routt County district attorney's office failed to file a fugitive complaint within that time. On July 2, 1979, a Colorado district judge released McKay on bond on the New Mexico charges. Under this bond, McKay was free to travel anywhere in the state of Colorado until July 27, 1979, when he was required to appear in court in Routt County on the New Mexico charges. McKay has not alleged that any of the above acts violated his constitutional rights or were otherwise improper.

As McKay was leaving the Routt County jail on July 2, he told Hammock that he was going to take the bus to Denver and then on to Buena Vista to catch up with the carnival with which he worked. That same day, Hammock called Pfeffer and told him that McKay had been released on bond because the district attorney had not filed the proper papers on time. Hammock told Pfeffer, erroneously, that McKay's bond was not valid outside the judicial district in which it was issued. Hammock also told Pfeffer, erroneously, that McKay's bond covered "local" charges only and was unrelated to the New Mexico warrant. Hammock informed Pfeffer that McKay would be traveling through Denver and Buena Vista, and that although McKay could not be rearrested in Routt County, he could be arrested in those cities. Hammock gave Pfeffer the names of Denver and Buena Vista police officers so Pfeffer could contact them to arrange for McKay's arrest. Hammock himself called both Denver and Buena Vista officials, and told them McKay would be traveling there. He also told them McKay was wanted on New Mexico charges, had been released on bond by mistake, and could be rearrested outside Routt County. Pfeffer also contacted both cities to arrange for McKay's arrest.

When McKay stepped off the bus in Denver in the early morning of July 3, 1979, he was arrested by Denver police. They held him twelve hours while they verified the validity of his bond and then released him. The Denver police attempted to send a teletype message to Pfeffer telling him that McKay was on bond and could not be rearrested in Colorado. Pfeffer never received the message because the New Mexico teletype was down at the time.

Meanwhile, on July 4, McKay traveled on to Buena Vista where he was arrested again. When the Buena Vista police notified Pfeffer of McKay's arrest, Pfeffer was still unaware that McKay was bonded on the New Mexico charges or that the bond was valid state-wide. Therefore, Pfeffer confirmed that the New Mexico warrant was outstanding and that New Mexico would extradite. McKay was held until the next day, when he was released after local officials once again verified the validity of his bond.

The present case is factually distinguishable from Baker in significant respects. Although the rationale supporting its decision is elusive, the Court in *Baker* concluded that due process had been satisfied there because, while the plaintiff "was indeed deprived of his liberty for a period of days, ... it was pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment." 443 U.S. at 144, 99 S.Ct. at 2694. The Court pointed out that "[t]he Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished 'without due process of law.'" *Id.* at 145, 99 S.Ct. at 2695. Although the instant case involves a valid arrest warrant, it also includes the subsequent issuance of a valid bond. The facts supporting a finding of due process in *Baker*—a judicial determination that the plaintiff was properly subject to arrest—were superseded in the instant case by a subsequent judicial determination that McKay

was entitled to temporary release. McKay allegedly was deprived of his liberty without due process because his arrests occurred in violation of the valid bond. Accordingly, *Baker* is not authority for concluding that McKay failed to state a claim under section 1983.

We nevertheless must determine whether McKay has satisfied the requirements for asserting a cause of action under section 1983 against all defendants. Defendants argue that the allegations and evidence establish at most mere negligence, and that negligence alone is insufficient to support a section 1983 claim. We conclude that a plaintiff need not necessarily address a defendant's state of mind to successfully articulate a section 1983 cause of action because "[s]ection 1983, unlike its criminal counterpart, 18 U.S.C. § 242, has never been found by [the Supreme Court] to contain a state-of-mind requirement." *Parratt v. Taylor*, 451 U.S. 527, 534, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).

"Both *Baker v. McCollan* [443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)] and *Monroe v. Pape* [365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)] suggest that § 1983 affords a 'civil remedy' for deprivations of federally protected rights caused by persons acting under color of state law *without any express requirement of a particular state of mind.* Accordingly, in any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."

*Id.* 451 U.S. at 535, 101 S.Ct. at 1913 (emphasis added).

However, the Court has noted that some constitutional violations may by their very nature incorporate an element of intent. *See Baker,* 443 U.S. at 140 n. 1, 99 S.Ct. at 2692 n. 1. Commentators generally agree that because section 1983 does not itself contain any intent requirement, the relevant inquiry should focus on what state of mind, if any, is imposed by the particular constitutional provision at issue. *See generally* S. Nahmod, Civil Rights & Civil Liberties Litigation, § 3.01–02 (1979); Kirkpatrick, *Defining a Constitutional Tort Under Section 1983: The State-of-Mind Requirement,* 46 Cin.L.Rev. 45 (1977); Comment, *Actionability of Negligence Under Section 1983 and the Eighth Amendment,* 127 U.Pa.L.Rev. 533 (1978).[5]

The Supreme Court has not specifically articulated what intent, if any, is embodied in the due process clause. In *Parratt,* the Court indicated that an act of simple negligence by a state official may result in a constitutional deprivation of due process. 451 U.S. at 536–37, 101 S.Ct. at 1913–14. Subsequent to *Parratt,* the Court significantly has suggested that a denial of due process can arise in the absence of any element of intent where the denial results from the implementation of an established state procedure that is deficient. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982) ("[I]t is the state system itself that destroys a complainant's property interest, by operation of law ... whether the Commission's action is taken through negligence, maliciousness, or otherwise."

The Court has most often addressed the intent issue indirectly in establishing the standards under which the conduct of a particular type of defendant rises to a denial of due process. In effect, the Court has built in an intent requirement in setting out

---

5. Thus, an intent requirement is not part of a section 1983 action unless the action is based on a constitutional provision which itself incorporates an element of scienter. Of course, in any section 1983 action, whether a defendant should be relieved of liability for a constitutional violation because he proceeded in good faith is an

issue that can be fully determined within the context of the affirmative defense of immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also, e.g., Tuttle v. City of Oklahoma City,* 728 F.2d 456, 458, Nos. 82–2165, 82–2175, slip op. at 2–3 (10th Cir.1984).

the various standards of proof under which local governing bodies or supervisors may be held liable, as well as in defining the defense of qualified immunity. *See, e.g., Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

■ With the above considerations in mind, we must examine the particular defendants and the capacity in which they are sued to determine whether the district court's grant of summary judgment in favor of any of them can be affirmed despite the court's erroneous reliance on *Baker v. McCollan.* McKay has alleged that he was deprived of his liberty without due process by Hammock's efforts to have him arrested despite Hammock's full knowledge of the validity of the bond. This allegation of denial of due process by intentionally causing false arrests is clearly sufficient to state a claim against Hammock. *See Lessman v. McCormick,* 591 F.2d 605, 609–611 (10th Cir.1979).

■ McKay also alleges that Pfeffer participated in the false arrests by the various acts described above. Although the evidence is weak that Pfeffer engaged in a sufficient abuse of power to constitute a substantial deprivation of liberty without due process, *see id,* neither the parties nor the trial court addressed the summary judgment issue on these grounds, having focused on the statute of limitations and *Baker v. McCollan* questions. Moreover, although Pfeffer pleaded qualified immunity below as an affirmative defense, he did not urge that ground as a basis for summary judgment and the record on this issue was therefore not developed. We decline to perform Rule 56 functions for the parties and the trial court, and we therefore remand as to Pfeffer, as well as Hammock.

■ Construing the complaint most favorably to McKay, he alleges that the sheriff of Routt County, DeLuca, was involved knowingly in Hammock's deprivation of McKay's liberty without due process. The complaint does not state whether DeLuca was sued in his individual or representative capacity, or both. However, as a supervisor, DeLuca is not liable in any capacity unless an "affirmative link" exists between the constitutional violation and either DeLuca's personal participation, his exercise of control or direction, or his failure to supervise. *See Rizzo,* 423 U.S. at 371, 96 S.Ct. at 604; *see also Monell,* 436 U.S. at 694 n. 58, 98 S.Ct. at 2037 n. 58, 56 L.Ed.2d 611 (1978); *McClelland v. Facteau,* 610 F.2d 693, 695–96 (10th Cir.1979). Here DeLuca's personal participation is alleged. In addition to denying participation, DeLuca pleaded the defense of qualified immunity. The existence of qualified immunity is clearly material if DeLuca is being sued individually; however it is not relevant if he is named only in a representative capacity because a local governing unit may not assert the immunity of its officials as a defense to liability under section 1983. *See Owen,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Because the summary judgment record was not developed on the merits of the claim against DeLuca other than with respect to the *Baker v. McCollan* issue, we reverse as to this defendant as well.

■ McKay alleges that DeLuca acted for the Routt County Sheriff's Office, which has been separately sued as a defendant. In *Monell,* the Supreme Court addressed the circumstances under which local governing bodies may be sued directly pursuant to section 1983. The Court concluded that such an entity is liable when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690, 98 S.Ct. at 2035. Liability may also arise for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id.* at 690–91, 98 S.Ct.

at 2035–36. However, the Court pointed out that a governing body is not liable "unless action pursuant to official ... policy of some nature caused a constitutional tort" and that an entity "cannot be held liable *solely* because it employs a tortfeasor." *Id.* at 691, 98 S.Ct. at 2036 (emphasis in original). DeLuca, as Sheriff, was the official responsible for the policies and procedures of the Routt County Sheriff's Office. Therefore, the Sheriff's Office will be liable under *Monell* for implementing an unconstitutional act if DeLuca knowingly was involved in an intentional constitutional deprivation. *See, e.g., Miller v. City of Mission,* 705 F.2d 368, 374–75 (10th Cir.1983). Accordingly, we also reverse as to defendant Routt County Sheriff's Office.

The Ruidoso City Police Department is another matter. There are no allegations in the complaint that would bring this defendant within the guidelines of *Monell.* Therefore we affirm the dismissal of the complaint for failure to state a claim against the police department.

Our reversal does not, of course, indicate any opinion on the merits of McKay's claims. As discussed above, in the summary judgment proceedings below the parties and the court focused their attention on the applicable statute of limitations and on whether McKay had stated a claim for relief under *Baker v. McCollan.* Consequently, they did not reach the issues that we have concluded are controlling, and the record on those issues has not been developed. We remand to allow the parties and the lower court an opportunity to pursue these matters further.[6]

### III.

### THE HARASSMENT CLAIM

McKay ultimately pleaded guilty to the New Mexico charges and was sentenced to probation on the condition that he make restitution and perform public service. At McKay's request he was allowed to perform his probation in Routt County, under the supervision of the Routt County Sheriff's Office. In his complaint and in his opposition to the Colorado defendants' motion for summary judgment, McKay alleged that Hammock, DeLuca, and other agents of the Routt County Sheriff's Office threatened to see that his probation was revoked if he filed a civil rights action based on the arrests discussed above.

The right of access to the courts is constitutionally protected. Thus, conduct under color of law which interferes with that right gives rise to a cause of action under section 1983. *See Ryland v. Shapiro,* 708 F.2d 967, 971–72 (5th Cir. 1983); *Lamar v. Steele,* 693 F.2d 559, 562 (5th Cir.1982), *cert. denied,* — U.S. —, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983). Moreover, a plaintiff need not successfully be prevented from filing his suit to state a claim. "The contrary rule would result in the anomaly of protecting only those individuals who remain out of court." *Id.*

The district court dismissed McKay's complaint without addressing the alleged denial of access to the courts. We remand for further proceedings on this issue.

AFFIRMED as to defendant Ruidoso City Police Department. REVERSED as to the remaining defendants.

6. Relying on the analysis in *Parratt v. Taylor,* 451 U.S. 527, 543–44, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981), defendants also argue that the state provides adequate tort remedies for plaintiff's claims and that plaintiff therefore is furnished all the process he is due. The district court rejected this argument summarily. Given the incomplete state of the record, we decline to decide the extent to which *Parratt* is applicable, if at all, to the type of liberty deprivation or to some or all of the various defendant actors alleged in this case. *See id.* at 545–46, 101 S.Ct. at 1917–18 (Blackmun, J., concurring).