Richard E. PFEIFFER, M.D., F.A.C.O.G.,
Plaintiff–Appellant,

v.

HARTFORD FIRE INSURANCE COM-
PANY; Memorial Hospital; J.R. Bru-
senhan; Samuel Downing, M.D.; and
Penrose Hospital, Defendants,

and

Robert Brittain, M.D.; Colorado State At-
torney General; its agents Ann Sayvetz,
David Burlage, and William Richard-
son, Defendants–Appellees.

No. 90–1012.

United States Court of Appeals,
Tenth Circuit.

April 5, 1991.

Ann E. Devine, Washington, D.C., for plaintiff-appellant.

Richard B. Caschette and John R. Mann of Cooper & Kelley, P.C., Denver, Colo., for Robert Brittain, M.D.

F. Michael Ludwig and Clifton J. Latiolais, Jr. of Wood, Ris & Hames, P.C., Denver, Colo., for Colorado State Atty. Gen., Ann Sayvetz, David Burlage, and William Richardson.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

This appeal arises out of an action filed by appellant Richard E. Pfeiffer against his medical malpractice insurer, the Colorado Attorney General, several Colorado assistant attorneys general and others in connection with disciplinary proceedings brought against him by the Colorado State Board of Medical Examiners. The principal issues on appeal concern the district court's refusal to remand this action to state court after Pfeiffer attempted to add nondiverse defendants to his complaint, its decision on summary judgment that the Colorado assistant attorneys general were absolutely immune from liability under section 1983 and the possible application of the statute of limitations as an additional bar to Pfeiffer's claims against these individual state defendants. We affirm in part and reverse in part.

*Background*

The following facts are undisputed unless otherwise noted:

Appellant Pfeiffer is a medical doctor who, at the times relevant to this proceeding, practiced in the area of obstetrics and gynecology in Colorado Springs. In 1979, defendant Memorial Hospital suspended Pfeiffer's staff privileges because of his refusal to treat an indigent patient. During this same period, three of Dr. Pfeiffer's patients accused him of sexual misconduct during the course of their care. Both of these incidents came to the attention of the Colorado State Board of Medical Examin-

ers (Board), and led it to initiate a complaint of unprofessional conduct against Dr. Pfeiffer on October 24, 1979. As required by C.R.S. § 12–36–118(4)(1985), this complaint was referred to an inquiry panel of the Board [1] for investigation after Pfeiffer was notified of the complaint and given an opportunity to respond to it. Rec.Vol. I, Doc. 151, Ex. C.

The Board's inquiry panel apparently completed its investigation in early 1980 because on January 17, 1980, the Board voted to refer the matter to the Colorado Attorney General's office for preparation of a formal complaint seeking disciplinary action against Pfeiffer. *Id.*, Ex. E; *see* C.R.S. § 12–36–118(4)(c)(IV). Ann Sayvetz, then a state assistant attorney general, began working on Pfeiffer's case in October, 1980. Rec.Vol. I, Doc. 151, Ex. E. William Richardson and David Burlage, also both assistant attorneys general, first became involved in the matter in January 1981 and October 1982, respectively. *Id.*

In or before December of 1980, Sayvetz and the Board learned that Penrose Hospital had recently taken disciplinary action against Pfeiffer in connection with one of his patient's delivery of a stillborn child. *See* Rec.Vol. I, Doc. 162, Ex. 7. In response to this information, Sayvetz briefly discussed the incident by telephone with the hospital's Director of Medical Affairs and wrote him a letter informing him that a Board investigator would be contacting the hospital for additional information. *Id.* On March 12, 1981, the Board voted to add the Penrose incident to the formal complaint being prepared by the Attorney General's office. Rec.Vol. I, Doc. 151, Ex. D.

Sometime after the Attorney General's office began preparation of this complaint, Pfeiffer requested that all Board proceedings against him be kept confidential until, at minimum, the Board had heard and decided his case. *Coe v. District Court,* 676 F.2d 411, 413, 415 (10th Cir.1982). The Board's hearing panel agreed to this request on the condition that Pfeiffer surrender his license to practice medicine in Colorado pending the outcome of the proceedings. Pfeiffer rejected this offer and, using a fictitious name, filed an action for injunctive and declaratory relief in federal district court to restrain the Board from publicizing the charges against him. *Id.* On March 4, 1982, the district court dismissed Pfeiffer's complaint on the ground that Pfeiffer could not proceed under a fictitious name. Pfeiffer then petitioned this court for a writ of mandamus or prohibition. On April 21, 1982, we denied that petition upon determining that Pfeiffer had no due process or other right to compel the Board to conduct its proceedings against him in secret. *Id.* at 417.

On May 10, 1982, shortly after this resolution of the confidentiality issue, the Board filed the formal complaint against Pfeiffer that had been prepared by the Colorado Attorney General's office. Rec. Vol. I, Doc. 151, Ex. A. The complaint charged Pfeiffer with professional misconduct in violation of the Colorado Medical Practices Act in connection with both the Memorial and Penrose Hospital incidents and the three reported incidents of sexual relations with patients.

Sometime during this period, Pfeiffer alleges that the individual state attorneys granted newspaper reporters access to their files on his case, resulting in the publication of the formal charges against him. Rec.Vol. I, Doc. 61, ¶ 28. Although there is no evidence in the record indicating when this alleged "press leak" happened, the parties appear to agree that it occurred in May 1982, after our decision in *Coe* but before the Board formally filed charges

---

1. Pursuant to C.R.S. § 12–36–118, the Board is divided into two panels for purposes of disciplinary proceedings. Each panel acts as both an inquiry and a hearing panel. All written complaints are initially assigned to an inquiry panel for investigation. If that investigation indicates that further proceedings are warranted, the inquiry panel refers the matter to the attorney general's office for preparation of a formal complaint to be filed with the second panel, which then acts as a hearing panel for the matter. The hearing panel may conduct its own evidentiary hearing on the complaint or refer it to an appointed hearing officer for decision subject to hearing panel review. Once the hearing panel submits its findings and conclusions regarding the disciplinary matter, this order becomes the order of the Board.

against Pfeiffer. Opening Brief at 10–11; State Defendants's Answer Brief at 29. Pfeiffer also alleges that the individual state attorneys later released discovery materials to the press during the Board's proceedings.

The Board conducted public hearings on the Pfeiffer charges between October 1982 and August 1983. In an order dated January 24, 1984, it concluded the matter by dismissing all charges other than that relating to the stillbirth at Penrose Hospital. Rec.Vol. I, Doc. 162, Ex. 14. With respect to that incident, the Board found that Pfeiffer's actions leading up to the stillbirth violated C.R.S. § 12–36–117(1)(p) because they constituted two or more acts or omissions that failed to meet generally accepted standards of medical practice. Rec.Vol. I, Doc. 162, Ex. 14 at 25. On appeal the Colorado Court of Appeals set aside the Board's determination upon finding that Pfeiffer's misconduct was actually a "single course of conduct" that did not violate the Colorado Medical Practices Act's "two or more acts or omissions" standard. *People v. Pfeiffer*, 725 P.2d 19, 21 (Colo.App. 1986).

In August, 1985, Pfeiffer filed this action in the Colorado District Court for Arapahoe County against his medical malpractice insurer, defendant Hartford Fire Insurance Company, for its alleged misconduct in defending him before the Board. Hartford removed this action to the United States District Court for the District of Colorado on the basis of complete diversity of citizenship between the parties. Pfeiffer responded by amending his complaint to assert state common law tort and/or federal civil rights claims based on 42 U.S.C. § 1983 against Colorado residents: Memorial and Penrose Hospitals; the Colorado Attorney General; three assistant attorneys general, Ann Sayvetz, William Richardson and David Burlage (individual state attorneys); and several doctors, including Dr. Robert Brittain, who allegedly partici-

pated in the Board's investigation and prosecution of Pfeiffer.[2]

The district court next entertained a flurry of motions to dismiss and for summary judgment from the new defendants. These motions ultimately led the court to dismiss Pfeiffer's section 1983 claims against the hospitals and private doctors for failure to allege the necessary state action and to dismiss his state law claims against these nondiverse defendants for failure to state a claim within the jurisdiction of the district court. *Pfeiffer v. Hartford Fire Ins. Co.*, No. 85–M–2136, Order of Dismissal As To Certain Defendants (July 17, 1987). The court then dismissed the state common law tort claims against the individual state attorneys due to Pfeiffer's failure to file notice of his intent to sue as required by Colorado's Governmental Immunity Act, C.R.S. § 24–10–109 (1988). *Pfeiffer v. Hartford Fire Ins. Co.*, No. 85–M–2136, Memorandum Opinion and Order (Feb. 18, 1988). The district court next granted summary judgment to the Colorado Attorney General on all claims against him as a result of his immunity from suit in federal court under the Eleventh Amendment. *Pfeiffer v. Hartford Fire Ins. Co.*, No. 85–M–2136, Memorandum Opinion and Order at 3 (June 20, 1988) (Summary Judgment Order). Finally, the court granted summary judgment to the individual state attorneys on the remaining section 1983 claim on the ground that Pfeiffer had failed to present any evidence that the actions he challenged fell outside the protective ambit of absolute prosecutorial immunity. *Id.* at 4.

Before granting the individual state attorneys summary judgment on the basis of prosecutorial immunity, the district court also considered these defendants' motion to dismiss Pfeiffer's section 1983 claim on statute of limitations grounds. *See Pfeiffer v. Hartford Fire Ins. Co.*, No. 85–M–2136, Memorandum Opinion and Order on Statute of Limitations (Oct. 8, 1987) (Statute of Limitations Order). The court found

---

**2.** Pfeiffer charged these new defendants with all or some of the following: the common law torts of outrageous conduct, invasion of privacy, tortious interference with medical practice and

abuse of process, and civil rights violations in the form of interference with Pfeiffer's property and liberty interests in his medical practice and license.

that the statute of limitations for this claim was six years based on its conclusions that: the applicable statute of limitations for section 1983 actions at the time Pfeiffer's claim arose was that of the most analogous state claim for relief based on the discrete facts of the claim, *id.* at 2 (citing *Zuniga v. AMFAC Foods, Inc.*, 580 F.2d 380 (10th Cir.1978)); that the most analogous state claim in this case was malicious prosecution, *id.;* and that the statute of limitations for this action in Colorado during the relevant period was six years, *id.* (citing C.R.S. § 13–80–110(g) (1973); *Dodge v. Montrose Potato Growers Coop. Assoc.*, 524 P.2d 1394, 1395 (Colo.App.1974)). Applying this statute of limitations, the district court held that any claim for relief under section 1983 that arose before January 5, 1981, six years from Pfeiffer's filing of his amended complaint, was barred. *Id.* The court did not rule on the effect of this holding, however, due to "the uncertainty concerning the operative facts of this case." *Id.* The district court did not give any further consideration to the statute of limitations issue before disposing of Pfeiffer's section 1983 claim on the independent ground of prosecutorial immunity.[3]

On September 28, 1989, Pfeiffer moved to certify each of the orders described above as final. The district court granted this motion and on December 13, 1989, entered a final judgment of dismissal as to all defendants other than Hartford. This appeal with respect to certain of the claims against Dr. Brittain, the Colorado Attorney General and the individual state attorneys timely followed.[4]

*Discussion*

Pfeiffer raises three issues on appeal: (1) whether the district court erred in failing to remand this action to state court after Pfeiffer amended his complaint to add claims against nondiverse defendants; (2) whether the district court erred in holding on summary judgment that the individual state attorneys were absolutely immune from Pfeiffer's section 1983 claim; and (3) whether his section 1983 claim against the individual state attorneys was barred by the statute of limitations. We discuss each issue in turn below.

A. *Failure to remand to state court*

■ Pfeiffer contends that remand was mandatory in this case because his post-removal addition of claims against Dr. Brittain and other nondiverse defendants rendered his action "improvidently removed" under 28 U.S.C. § 1447(c).[5] As a result, Pfeiffer argues, the district court erred in dismissing his state law tort claims against Dr. Brittain and his section 1983 claim against the Colorado Attorney General because the state court receiving the case on remand would have had jurisdiction to hear them.

The error of this argument is its assumption that a party may force remand of an action after its removal from state court by amending the complaint to destroy the federal court's jurisdiction over the action. Instead, the propriety of removal is judged on the complaint as it stands at the time of the removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 349, 83 L.Ed. 334 (1939) (right to remove is determined according to plaintiff's pleadings at the time of the petition for removal); *Swani-*

---

**3.** The district court did rely on its previous statute of limitations holding to rule on summary judgment that the six-year statute of limitations barred Pfeiffer's section 1983 claim to the extent that it sought relief for nonprosecutorial activities by the individual state attorneys before the Board's January 1980 referral of the Pfeiffer case to them. Summary Judgment Order at 3–4. In fact, there was no question regarding these defendants' liability for such nonprosecutorial acts because it was undisputed that they did not become involved in the Pfeiffer matter until after the January 1980 referral. *See* Rec.Vol. I, Doc. 15, Ex. E.

**4.** All other defendants in this action, with the exception of the original defendant, Hartford, were dismissed by stipulation of the parties on June 11, 1990.

**5.** At all times relevant to this issue, this provision provided: "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court *shall* remand the case." 28 U.S.C. § 1447(c) (1985).

*gan v. Amadeo Rossi, S.A.*, 617 F.Supp. 66, 67 (E.D.Mich.1985) (same); *see St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294, 58 S.Ct. 586, 593, 82 L.Ed. 845 (1938) (barring post-removal amendment to lower amount in controversy below federal court's jurisdictional limit). Under this standard, there is no question that Pfeiffer's action was properly removed to federal court on Hartford's petition.

We also reject Pfeiffer's implicit argument that the district court abused its discretion in dismissing the claims against Dr. Brittain and the Colorado Attorney General instead of remanding them and the remainder of the action to state court. The cases Pfeiffer cites in support of this argument are either indirectly supportive of our ruling, *see Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988) (district court has discretion to remand action to state court rather than dismiss it when plaintiff amends complaint to eliminate federal questions that had formed basis for removal); *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir.1987) (district court has broad discretion in deciding whether to allow amendment to join a nondiverse, nonindispensable party), or readily distinguishable from the present case. *See, e.g., Desert Empire Bank v. Insurance Co. of N. Am.*, 623 F.2d 1371, 1375–76 (9th Cir. 1980) (principles of fundamental fairness required remand); *Grogan v. Babson Bros. Co.*, 101 F.R.D. 697, 700 (N.D.N.Y.1984) (remand ordered to consolidate action with parallel action pending in state court); *Stanhope v. Ford Motor Credit Co.*, 483 F.Supp. 275, 278–79 (W.D.Ark.1980) (remand rather than dismissal chosen because facts giving rise to claim against nondiverse defendant were not fully known to plaintiff at the time the state court action was filed). Accordingly, we affirm the district court's dismissal of the claims against these two parties for lack of federal jurisdiction.

B. *Absolute immunity of individual state attorneys*

■ The district court granted summary judgment in favor of the individual state attorneys on the basis of prosecutorial immunity. Summary Judgment Order at 4. Pfeiffer argues that this ruling was erroneous because all or some of the conduct he complains of was either investigative or administrative in function and hence not subject to absolute immunity from section 1983 liability. We review this claim and the district court's grant of summary judgment *de novo* under the standard established by Rule 56(c) of the Federal Rules of Civil Procedure. *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir. 1990). This standard requires us to affirm the district court if, upon viewing the factual record in the light most favorable to the party opposing summary judgment, we conclude that "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Abercrombie*, 896 F.2d at 1230. This standard is met if the party moving for summary judgment carries its burden of initially identifying the absence of genuine issues of fact, and the nonmovant fails to come forward with specific evidence demonstrating a triable issue of fact as to each essential element of his case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

It is well established that prosecutors are absolutely immune from suit under section 1983 concerning activities "intimately associated with the judicial ... process," such as initiating and pursuing criminal prosecutions. *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976); *see Snell v. Tunnell*, 920 F.2d 673, 686 (10th Cir.1990). It is also well established that this absolute prosecutorial immunity extends to state attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings. *See Butz v. Economou*, 438 U.S. 478, 509, 515–17, 98 S.Ct. 2894, 2912, 2915–16, 57 L.Ed.2d 895 (1978) (agency enforcement proceedings); *Meade v. Grubbs*, 841 F.2d 1512, 1532 n. 18 (10th Cir.1988) (civil proceeding). The rationale for granting absolute immunity in

each of these instances is to allow prosecutors and those performing equivalent functions "the latitude to perform their [quasi-judicial] tasks absent the threat of retaliatory section 1983 litigation." *Snell,* 920 F.2d at 686–87; *see Imbler,* 424 U.S. at 424–26, 96 S.Ct. at 992–93.

▮▮▮▮ Consistent with these general principles, the courts have long drawn a distinction between a prosecutor's actions in connection with the judicial process, which are protected by prosecutorial immunity, and those that are primarily investigative or administrative in nature and hence are not so protected from suit. *See Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 994–95; *Harlow v. Fitzgerald,* 457 U.S. 800, 811 n. 16, 102 S.Ct. 2727, 2734 n. 16, 73 L.Ed.2d 396 (1982); *Snell,* 920 F.2d at 686, 693; *Rex v. Teeples,* 753 F.2d 840, 843 (10th Cir.), *cert. denied,* 474 U.S. 967, 106 S.Ct. 332, 88 L.Ed.2d 316 (1985). In so doing, however, we and other courts have recognized that absolute immunity may attach even to such administrative or investigative activities "when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court."[6] *Snell,* 920 F.2d at 693; *see Gobel v. Maricopa County,* 867 F.2d 1201, 1204 (9th Cir.1989) (actions taken as part of prosecutor's preparation of case are absolutely immune even if such actions could be characterized as investigative or administrative); *see Imbler,* 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33. In making the difficult distinction between these prosecutorial and nonprosecutorial investigative and administrative activities, "the determinative factor is 'advocacy' because that is the prosecutor's main function and the one most akin to his quasi-judicial role." *Rex,* 753 F.2d at 843. Thus, the more distant a function is from the judicial process and the initiation and presentation of the state's case, the less likely it is that absolute immunity will attach. *See Snell,* 920 F.2d at 687.

In this case, Pfeiffer alleges that the individual state attorneys violated his civil rights by (1) failing to investigate the charges against him "in a reasonable fashion;" (2) filing and prosecuting charges that they knew or should have known were false; (3) attempting "to coerce Plaintiff into giving up his practice of medicine" in return for keeping the Board proceedings confidential and not filing sexual assault charges against him; and (4) permitting newspaper reporters to access files on the Pfeiffer matter and otherwise "giving wrongful publicity" about the complaints before the Board. Rec.Vol. I, Doc. 61, ¶¶ 25–28, 39, 41, 57, 60–61, 80–81. On appeal, Pfeiffer does not challenge the individual state attorneys' immunity from section 1983 liability based on their filing and prosecution of the Board's formal complaint,[7] but claims that each of the other cited activities was open to suit because each was ultimately investigative or administrative in nature.

### 1. Investigation after Board referral

▮▮▮▮ It is undisputed that the first activity complained of by Pfeiffer, the individual state attorneys' investigation of the charges against him, occurred after the Board had directed the Attorney General's office to prepare a formal disciplinary complaint based on the Memorial Hospital and alleged sexual misconduct incidents. There is no question in this circuit that prosecutors are absolutely immune from liability for allegedly failing to conduct an adequate, independent investigation of matters referred to them for prosecution. *See Martinez v. Winner,* 771 F.2d 424, 437 (10th Cir.1985). There is also no evidence in the record on summary judgment suggesting that the individual state attorneys' participation in any investigation of these

---

**6.** Even purely investigative acts are accorded qualified "good faith" immunity, however. *See Rex,* 753 F.2d at 843.

**7.** There is no dispute that the Board's duties in disciplinary proceedings are " 'functionally comparable' to that of a court of law," *Horwitz v.*

*Board of Medical Examiners,* 822 F.2d 1508, 1511 (10th Cir.), *cert. denied,* 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987), thus rendering the individual state attorneys' prosecutorial functions in connection with these proceedings absolutely immune from section 1983 liability.

incidents was unnecessary to their preparation of the case against Pfeiffer.[8] Thus, we find no error in the district court's determination that any alleged misconduct committed by the individual state defendants in their investigation of the Memorial Hospital and sexual relations incidents is absolutely immune from suit.

■ Plaintiff argues that a different result is required with respect to attorney Sayvetz's investigation of the Penrose Hospital incident because she embarked on this investigation before the Board formally referred this charge to the Attorney General's office. As a result, Pfeiffer claims, Sayvetz was acting outside of her authority and cannot claim absolute immunity for this activity.

The record, viewed most favorably to Pfeiffer, indicates that Sayvetz first contacted a Penrose Hospital official regarding the incident on December 10, 1980. In this telephone conversation, Sayvetz apparently sought confirmation of information she had received from another, unnamed source regarding Penrose's disciplinary action against Pfeiffer. She also informed the official of the hospital's duty to report the incident to the Board and informed him that the incident would be taken to the Board's inquiry panel on the following day. Rec.Vol. I, Doc. 161, Ex. 7. The December 11, 1980 minutes of the inquiry panel indicate that it did consider the incident that day and that it directed Karen Schicker, a Board investigator, to initiate a formal investigation of the incident on the Board's behalf. *Id.*, Ex. 6. Sayvetz notified Penrose of the Board's intended investigation in a December 15, 1980 letter, written on behalf of the Board, that confirmed her earlier telephone call to the hospital regarding its statutory reporting obligations. There is no other evidence that Sayvetz or any of the other individual state attorneys investigated the Penrose incident before its formal referral to the Attorney General's office on March 12, 1981.

Even if we assume *arguendo* that Pfeiffer is correct in asserting that Sayvetz acted beyond her statutory authority when she telephoned Penrose concerning an incident that was not included in the January 1980 referral to her office, we cannot agree that this single unauthorized act places her conduct outside the bounds of prosecutorial immunity. "While a prosecutor might lose absolute immunity when he acts with a complete and clear absence of authority, such a condition does not occur when a prosecutor has an arguable basis of authority grounded in a statute." *Snell*, 920 F.2d at 694. Here, C.R.S. § 12–36–118(4)(c)(IV) required Sayvetz, as a member of the Attorney General's office, to prepare and file a formal complaint against Pfeiffer at the Board's direction. As part of preparing a complaint pursuant to the Board's January 1980 referral, Sayvetz necessarily had to investigate the incidents that would form the basis of that complaint. *See Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33 (noting that preparation of complaint requires "the obtaining, reviewing, and evaluating of evidence.") If, in the course of this authorized investigation, she came across information of another incident of possibly unprofessional conduct by Pfeiffer, it is at least arguable that she had sufficient statutory authority with respect to preparation of a formal complaint against the doctor for her to make a single phone call to confirm the new information before she submitted it to the Board for its consideration and possible future action.

In *Snell*, we also recognized that assembling factual data did not deprive an agency lawyer of absolute prosecutorial immunity. 920 F.2d at 693–94. In that case, however, the agency lawyer was denied absolute prosecutorial immunity because she knowingly bypassed the district attorney's office to avoid prosecutorial discretion. *See id.* at 696. No such problem exists in this case. Accordingly, we reject Pfeiffer's contention that Sayvetz was not absolutely immune for her limited pre-re-

---

**8.** This is not a case, therefore, like *Rex v. Teeples*, 753 F.2d 840 (10th Cir.1985), in which we held that the prosecutor's pre-indictment participation in a police investigation was not part of

his prosecutorial function and hence was not absolutely immune from liability under section 1983.

**1492**

ferral investigation of the Penrose Hospital incident.[9]

Plaintiff also alleges in his brief that Sayvetz's investigation of the Penrose incident is but one example of the individual state attorneys' continual, police-like investigation into his practice in an unauthorized attempt to develop additional charges against him. Again, however, upon defendants' motion for summary judgment, Pfeiffer failed to produce any evidence, other than that discussed above, which even suggests that these defendants investigated incidents that had not been formally referred to the Attorney General's office. Although Pfeiffer blames this lack of evidence on protective orders that reportedly denied him access to the individual state attorneys or their files, there is no indication in the record that Pfeiffer was precluded from procuring evidence of this allegedly over-broad investigation from co-workers and others that must have had knowledge of it. Accordingly, Pfeiffer did not meet his burden of coming forward with specific evidence demonstrating a triable issue of fact on this issue, *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, and his challenge to the district court's summary judgment on this basis is therefore unavailing.

### 2. *Coercive plea bargaining*

█ Pfeiffer next claims that the individual state attorneys improperly tried to force him to give up his medical practice, first in return for keeping the Board proceedings confidential and then by threatening to file sexual assault charges against him. Pfeiffer further contends that both of these offers were administrative actions not subject to absolute immunity. We cannot agree. Even if we assume that the individual state attorneys, rather than the Board, were responsible for these proposals, we concur with the district court that

these offers were akin to plea bargaining, an activity that is absolutely immune from liability due to its intimate association with the judicial process. *See Hammond v. Bales*, 843 F.2d 1320, 1321–22 (10th Cir.1988); *Taylor v. Kavanagh*, 640 F.2d 450, 453 (2d Cir.1981). Accordingly, we hold that the individual state defendants are absolutely immune from suit regarding these offers.

### 3. *Wrongful publication of disciplinary proceedings*

█ Pfeiffer also alleges that the individual state attorneys violated his civil rights by: allowing the press to access files regarding his case sometime in May 1982; later providing the press with discovery materials, including the deposition of one of his complaining patients; and warning his patients and co-workers that Pfeiffer was going to lose his medical license as a result of the disciplinary proceedings. Rec. Vol. I, Doc. 61, ¶¶ 28, 39. Pfeiffer argues that at least the first two of these incidents of "wrongful publicity" were not related to the individual state attorneys' quasi-judicial function and hence are not protected from section 1983 liability by prosecutorial immunity.

In making this argument, Pfeiffer correctly reports that "a prosecutor's statements to the press have been consistently considered as a part of the prosecutor's administrative function, only entitling the prosecutor to qualified immunity." *England v. Hendricks*, 880 F.2d 281, 285 (10th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990). The case law supporting this rule, however, concerns prosecutors' disclosure of confidential information presented in grand jury proceedings, *see Rose v. Bartle*, 871 F.2d 331, 346 (3d Cir.1989); *Powers v. Coe*, 728 F.2d 97, 100, 103 (2d Cir.1984), or statements made by prosecutors during or based on their involvement in nonprosecu-

---

**9.** In the alternative, we hold that any section 1983 claim by plaintiff against Sayvetz based on this incident is barred under even the most liberal statute of limitations possibly applicable to this action. This six-year statute of limitations, derived from Colorado's statute of limitations for bringing actions for malicious prosecu-

tion, *see* Summary Judgment Order at 2, bars suit on any claim arising before January 5, 1981, six years before this claim was filed against Sayvetz. Sayvetz's allegedly unauthorized and nonprosecutorial contact with Penrose Hospital occurred during December 1980.

torial investigative activities. *See Gobel,* 867 F.2d at 1205 (statements made by prosecutor during televised sting operation); *Marrero v. City of Hialeah,* 625 F.2d 499, 506 (5th Cir.1980) (prosecutor's statements were essentially those "of an investigative officer informing the press of activities occurring at the scene of the crime"), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981); *Hampton v. Hanrahan,* 600 F.2d 600, 633 (7th Cir.1979) (prosecutor made statements commenting on alleged crime and plaintiffs' role in it immediately after crime occurred and before judicial proceedings began), *rev'd on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). This case is quite different from both of these scenarios. Here, the information allegedly released by the individual state defendants was collected and prepared in the course of prosecutorial activities immune from suit under section 1983. *See Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 994–95. As suggested by our decision in *Coe,* there is also no indication that this information was confidential in any way. *See* 676 F.2d at 417 (Pfeiffer had no statutory or due process right to confidential proceedings before the Board). Even with these differences, however, we cannot agree that the individual state attorneys' dissemination of this information to the press and others outside of the Board proceedings constitutes a quasi-judicial function "deserving of the cloak of absolute immunity." *Powers v. Coe,* 728 F.2d at 103; *see Gobel,* 867 F.2d at 1205 ("a prosecutor's public statements regarding a criminal proceeding are not protected by absolute immunity because they are not quasi-judicial acts.") We therefore reverse the district court's holding that Pfeiffer's wrongful publicity claim against the individual state attorneys was barred by absolute prosecutorial immunity.

## C. *Statute of limitations defense*

■ Because we have affirmed the district court's judgment against all but a portion of Pfeiffer's section 1983 claim on absolute immunity grounds, we need not determine whether the immunized portion of this claim was also barred by the applicable statute of limitations. Given the parties' briefing of this issue, however, as well as our authority to affirm the district court on any ground supported by the record, *see Dixon v. Richer,* 922 F.2d 1456, 1464 (10th Cir.1991), we will consider the statute of limitations issue with respect to that portion of Pfeiffer's section 1983 claim that is not barred by absolute prosecutorial immunity, that is his "wrongful publicity" claim.

The initial and most difficult question concerning this issue is identification of the applicable statute of limitations. Pfeiffer filed his section 1983 claim on January 5, 1987. Several years earlier, on March 30, 1984, we held in *Garcia v. Wilson,* 731 F.2d 640 (10th Cir.1984), *aff'd,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), that every claim under 42 U.S.C. § 1983 is a claim "for injury to personal rights" governed by the relevant statute of limitations for the state in which the claim accrued. *See id.* at 650–51. Applying this rule to the present case, the applicable statute of limitations for Pfeiffer's section 1983 wrongful publicity claim would be three years. *McKay v. Hammock,* 730 F.2d 1367, 1370 (10th Cir.1984) (applying *Garcia* to hold that C.R.S. § 13–80–108(1)(b)(1973), a three-year residuary statute of limitations, governs section 1983 actions arising in Colorado).[10] Based on Pfeiffer's complaint, the latest date on which the individual state attorneys could have wrongfully publicized information regarding Pfeiffer's case is January 24, 1984, the date on which the Board concluded its proceedings against Pfeiffer.[11] Accordingly, the possibility remains that at least some portion of

---

**10.** In 1986, Colorado repealed the three-year residuary statute relied upon by the *McKay* court. 1986 Colo.Sess.Laws ch. 114. This statute remains in effect, however, for all claims, such as Pfeiffer's in this case, that arose before the July 1, 1986, effective date of this legislative act. *Id.,* § 23, as amended by 1986 Colo.Sess. Laws ch. 116, § 1.

**11.** Pfeiffer does not allege any wrongful disclosure by the defendants except in conjunction with the Board's disciplinary proceedings against him.

Pfeiffer's wrongful publicity claim arose after January 5, 1984, and hence within the three-year limitations period dictated by the *Garcia* decision.

A different result, however, is obtained if one applies the statute of limitations in effect during the October 1980 to January 1984 period in which Pfeiffer's wrongful publicity claim must have accrued. Under this pre-*Garcia* rule, the proper statute of limitations to apply to this section 1983 claim is that of the most analogous state claim for relief as determined by the discrete facts of the claim. *See Board of Regents v. Tomanio*, 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980); *Brogan v. Wiggins School Dist.*, 588 F.2d 409, 412 (10th Cir.1978); *Zuniga v. AMFAC Foods, Inc.*, 580 F.2d 380, 383 (10th Cir.1978). When the district court considered this issue, it concluded that the most analogous state claim to Pfeiffer's allegations as a whole was malicious prosecution, which was governed by a six-year statute of limitations at the time of the accrual of this action. *See* Statute of Limitations Order at 2. Now that we have established that prosecutorial immunity has reduced Pfeiffer's section 1983 claim to allegations of "wrongful publicity," we agree with the individual state attorneys that the most analogous state cause of action to this remaining claim, under the pre-*Garcia* rule, is defamation. The applicable Colorado statute of limitations for such an action at the time this claim arose was one year from the date of publication. C.R.S. § 13–80–102 (1973); *see Spears Free Clinic & Hosp. for Poor Children v. Maier*, 128 Colo. 263, 261 P.2d 489, 491 (1953). Accordingly, if the pre-*Garcia* rule applies, Pfeiffer's section 1983 claim against the individual state defendants based on their allegedly wrongful disclosures during the Board proceedings is barred by the applicable statute of limitations.

The choice between these two different statutes of limitations, and the different results obtained under each, is governed by the Supreme Court's decision in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 662–64, 107 S.Ct. 2617, 2621–22, 96 L.Ed.2d 572 (1987) (applying *Chevron* analysis to determine the retroactive application of statutes of limitations adopted under *Wilson v. Garcia*); *St. Francis College v. Al–Khazraji*, 481 U.S. 604, 609, 107 S.Ct. 2022, 2026, 95 L.Ed.2d 582 (1987) (same). In *Chevron*, the Court set forth three factors to be considered in determining whether a current judicial rule should be given retroactive effect or whether the previously existing rule should govern. These three factors are: (1) whether the more recent rule or decision establishes "a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed;" (2) whether, given the history, purpose and effect of the new rule, retroactive application of this rule will further or retard its operation; and (3) whether retroactive application of the new rule "could produce substantial inequitable results." *Chevron*, 404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted). These factors are generally considered on a case-by-case basis to determine whether a new rule of law should be applied retroactively. *Derstein v. Van Buren*, 828 F.2d 653, 655 (10th Cir.1987); *Thomas v. Shipka*, 829 F.2d 570, 572 (6th Cir.1987).

This court has previously utilized the *Chevron* analysis to hold that the rule of *Garcia* should not be applied retroactively to bar a section 1983 action filed before *Garcia* that was timely filed "under the law in effect at the time ... suit was commenced," *Jackson v. Bloomfield*, 731 F.2d 652, 655 (10th Cir.1984), or to bar a claim that accrued before *Garcia* but was filed after that decision when the claim was timely filed under the statute of limitations in effect when it accrued. *Derstein*, 828 F.2d at 655. In both instances, our decisions were based in part on the inequity that would result to plaintiffs from retroactively imposing a *Garcia*-derived statute of limitations that automatically precluded their claims. *See Derstein*, 828 F.2d at 656; *Jackson*, 731 F.2d at 655. In this case, we are confronted with a different

situation because, as described above, retroactive application of the *Garcia* rule and its three-year limitations period would permit Pfeiffer to proceed with a claim that was otherwise untimely filed. Thus, the potential inequity from retroactive application in this case is to the defendant rather than to the plaintiff. Such inequity to defendants may be substantial enough in some circumstances to bar retroactive application of the rule of *Garcia*. *See, e.g., Foster v. Board of School Comm'rs,* 872 F.2d 1563, 1567 (11th Cir.1989) (holding that third *Chevron* factor weighed against retroactive application of *Garcia v. Wilson* because such application would expand statute of limitations in manner unfair to defendants).

In its consideration of *Garcia* and the statute of limitations issue, the district court did not address this potential inequity to the individual state attorney defendants or any other aspect of the *Chevron* test as it might apply specifically to Pfeiffer's wrongful publicity claim. It also does not appear that the parties addressed this individual component of Pfeiffer's broader section 1983 claim in their statute of limitations arguments to the district court. Given this record and lack of argument, and the principle that the *Chevron* analysis must be made on the basis of the facts of each case, we therefore remand the issue of *Garcia*'s possible retroactive application to Pfeiffer's wrongful publicity claim to the district court for determination under the principles enunciated in *Chevron* as applied to the facts and circumstances of this case.

The judgment of the United States District Court for the District of Colorado is therefore AFFIRMED in part and REVERSED and REMANDED in part for additional proceedings consistent with this opinion.